## Federal Land Bank of Louisville, Ky., v. Crombie et al.

(Decided March 15, 1935.)

ROGER D. BRANIGIN, R. A. BUCKLES, MARTIN R. GLENN and L. W. ROSS for appellant.

H. B. KINSOLVING, Jr., and W. R. REASOR for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On September 28, 1922, the appellant and plaintiff below, the Federal Land Bank of Louisville, loaned to the appellee and one of the defendants below, David Crombie, $7,000, evidenced by a note of that date and payable in annual installments through a period of years with a precipitating clause whereby the lender might declare the whole debt due and proceed to collect it after default in stipulated payments. Simultaneously with the creation of the debt, Crombie and his wife secured it by executing a mortgage on a farm mostly in Spencer county, but partly in Bullitt county. Some of the installments were paid, either in whole or partially, but after substantial defaults in their payments the bank filed this equity action in the Spencer circuit court against the borrower and his wife, M. C. Brumley (to whom Crombie had sold and conveyed the land in part consideration of Brumley assuming the debt), and the Bank of Taylorsville, who in the meantime had acquired a subordinate lien on the land, and all of them will be hereinafter referred to as defendants.

Judgment by default for the balance due with interest, amounting in all to $6,853.82, was rendered, as was also an order made for the sale of the farm to satisfy it. But in rendering the order of sale the court put this direction in it: "The Commissioner is directed to not accept a bid for less than the debt, interest and costs of the plaintiff, and the current taxes," to which the plaintiff excepted. As so directed the commissioner advertised the land for sale, but before offering it he appointed appraisers pursuant to the provisions of section 2362 of our Statutes (inserted immediately following section 696 of our present Civil Code of Practice), and they duly appraised the property at the sum of $4,000. Plaintiff at the sale, made following that appraisement, bid the sum of $3,000, which was more than two-thirds of the value of the property as fixed by the appraisers and which became an absolute sale without the right of redemption under the provisions of section 2364 of our Statutes, which is also inserted following section 696 of the Civil Code of Practice. That section

also provides that if the highest bid at the sale is not equal to two-thirds of the appraised value of the property the debtor shall have the right to redeem within twelve months, but after that time, unless so redeemed, the sale also becomes absolute.

Pursuant to the directions given him in the order of sale, the master commissioner reported the facts to the court; whereupon plaintiff moved that the sale be confirmed and the commissioner be directed to execute a deed to it, but which the court overruled with exceptions taken, and in the same order it directed its commissioner to resell the property on the same terms and under the same limitations contained in the original order of sale, to which plaintiff excepted, and it prosecutes this appeal from the two orders referred to, i. e., the one fixing the upset price at the amount of the judgment, interest, and taxes due, and the other overruling plaintiff's motion to confirm the sale and ordering a resale of the property upon the same restrictions.

The statutes referred to are of long standing and prescribe the remedy whereby liens on real estate may be enforced and whereby their holders may appropriate the encumbered property to the payment of their debts in whole or in part, and, with the exception of some equitable principles such as inadequacy of price, fraud, mistake, collusion, etc., they have been held mandatory upon the courts and may not be ignored by them. The right of the Legislature to enact them cannot be, nor is it attempted to be, denied. Section 125 of our Constitution prescribes for the establishment of a circuit court in each county of the commonwealth, and the next section (126) says: "The jurisdiction of said court shall be and remain as now established, hereby giving to the general assembly the power to change it." In section 184, page 859, 15 Corpus Juris, the text says: "Where the organic law delegates to the legislature the power to create, establish, organize, or reorganize courts, to regulate their jurisdiction, or otherwise to legislate concerning them, that body may do so, subject to whatever restrictions or limitations are imposed." Among the cases cited in that excerpt is Digby v. Newport City Court, 8 Ky. Law Rep. 144; Id., 10 Ky. Opin. 646. On page 901 of the same volume, in section 275, it is said: "It is within the power of the legislature, subject to such provisions as may be incorporated in the constitution, to *establish the procedure* by which

courts shall exercise their jurisdiction, and where a positive rule of practice is established by statute, the courts have no discretion in the matter.'' (Our italics.) Many supporting cases are cited in the notes to that text with none to the contrary. The following section of the text (276) on the same page defines the power of *courts* to make rules governing their procedure when not in conflict with statutory provisions relating thereto, and then says: ''This power is, however, not absolute but subject to limitations based on reasonableness and conformity to constitutional and statutory provisions. Thus a court can not make and enforce rules  * * * which contravene any constitutional or statutory provisions or principles of general law.'' In support of that text the domestic cases of Conrad Schopp Fruit Co. v. Bondurant, 134 Ky. 568, 121 S. W. 482; Petty v. Wilbur Stock Food Company, 128 Ky. 130, 107 S. W. 699, 32 Ky. Law Rep. 956; and Kennedy v. Cunningham, 2 Metc. 538, are cited in the notes.

The text in 7 R. C. L. p. 1029, sec. 57, in defining the term ''jurisdiction'' as applied to courts, says: ''The word 'jurisdiction' (jus dicere) is a term of large and comprehensive import, and embraces every kind of judicial action, and hence every movement by a court is necessarily the exercise of jurisdiction. In the sense, however, in which the term ordinarily is used jurisdiction may be concisely stated to be the right to adjudicate concerning the subject-matter in a given case. The tendency of modern decisions, however, is to enlarge the definition of jurisdiction to make it include not only the power to hear and determine but also the power to render the particular judgment in the particular case. Complete jurisdiction includes not only the power to hear and determine the cause, but also power to *enforce* the judgment; and courts usually decline to entertain, or attempt to exercise, jurisdiction intended to be complete, if it fails to confer power to enforce the judgment which may be rendered.'' (Our italics.) On page 1024 of the same volume of R. C. L., section 51, the text says: ''The power of courts to make such rules as they may deem necessary is subject to the limitation that such rules must not contravene a statute or the organic law. Rules of court must be subordinate to the law, and in case of conflict the law will prevail.'' Further along in the same section the writer says: ''Again, it is clear, whether any statute

directly controls the subject or not, that a litigant can not *by rule of court* be deprived of a substantial right, or so embarrassed in its exercise that he may be deprived without his fault of its benefit.'' (Our italics.) The preceding and following texts in each of the publications referred to emphatically confirm the principles stated, i. e., that courts are bound by statutory rules of procedure as constituting a part of their jurisdiction when such statutes are not inhibited by the Constitution of the jurisdiction of the forum, and especially is that true when, as with us, the Constitution expressly authorizes such legislative enactments. We, therefore, see that the rule adopted by the trial court, and which it attempted to put into execution by the orders here complained of, was not only in direct conflict with our statutory enactments upon the subject, but it is and was one which, if made in the absence of such enactments, would deprive plaintiff as a litigant in the court of his remedy to enforce his rights; or at the least it had the effect to curtail his remedy so as to compel him to satisfy his debt with the property in lien, although it might in many cases be wholly insufficient in value for that purpose. The authorities to which we have referred inhibit the adoption and enforcement of such a rule, even in the absence of statutory regulations of its jurisdiction in the premises.

Directly bearing upon the right of the Legislature under our Constitution to prescribe rules of procedure and practice, such as is here involved, and which when done are mandatory upon the courts of this jurisdiction, are the recent cases of B'Hymer's Guardian ad litem v. B'Hymer, 257 Ky. 10, 77 S. W. (2d) 411, 412, and Kentucky Joint Land Bank v. Fitzpatrick, 237 Ky. 624, 36 S. W. (2d) 25, 26. In the first one the question of the right of courts to sell infant's real estate was involved, and in the second one the question of inadequacy of bid—not as measured by the then value of the property ordered sold, but as superinduced by the depressed economic condition prevailing throughout the country— was involved. In speaking of the power of courts to sell infant's real estate in the B'Hymer Case, we said: ''That power is not inherent. It is derived from the statutes, and its exercise is defined and limited by specific directions, which must be strictly observed. In a word, the court can dispose of an infant's land only in strict accordance with the terms of the statutory

laws. They are its sole and only power and single source of jurisdiction," etc. A number of domestic cases are cited in the opinion in support of that statement. In the Fitzpatrick Case, in overruling the motion of the mortgagor to set aside the sale because of inadequacy of price brought about in the manner we have stated, we said: "But have the courts power to declare a moratorium? * * * Though the situation be evei so deplorable and compassion be ever so great for those affected, when the debt is due, the creditor cannot be deprived of his right to collect it im accordance with the processes of the law."

But it is urged upon us by learned counsel for defendants that the court's action was authorized by the opinions in the cases of Home Building & Loan Association v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481; Suring State Bank v. Giese, 210 Wis. 489, 246 N. W. 556, 85 A. L. R. 1477; Federal Title & Mortgage Guaranty Co. v. Lowenstein, 113 N. J. Eq. 200, 166 A. 538; and Potter Matlock Trust Co. v. Warren County, 182 Ky. 840, 207 S. W. 709, 710. An examination of them will reveal most material distinctions between their facts and those present in this case, even if we were under obligation to follow the foreign ones when confronted with similar facts. The Supreme Court in the Blaisdell Case had before it the constitutionality of a statute (not a court ruling) enacted by the Minnesota Legislature relating to enforcement proceedings of real estate liens, the terms of which it is unnecessary to here state, more than to say that it prescribed for a modified moratorium whereby the debtor might obtain a reasonable extension of time in which to pay his debt. The question was whether the statute infringed upon any provision of the Federal Constitution, and the court held that the rights of the debtor were sufficiently safeguarded and protected by the act so as to prevent it from invading his constitutional privileges as guaranteed by the Federal Constitution. The distinction between that case and this one is so broad as that it may be regarded as glaring. No act of our Legislature is here involved, but only a rule of court which, as we have seen, is in direct conflict with a mandatory statute regulating the subject. The other foreign cases from state jurisdictions are likewise inapplicable because of the different facts involved. In none of them did the court run counter

to an express mandatory statute covering the specific point or matter determined, and for which reason, plus the further fact that if it were otherwise we would not be authorized to follow them (in view of our own declarations supra), we will not enter into a discussion of their facts, nor attempt to point out in this opinion the distinction between them and this case.

The only domestic case cited or relied on in support of the criticized orders of the court is the Potter Matlock Trust Company Case, supra. In that case the city of Bowling Green, as well as the fiscal court of Warren county, had granted a franchise privilege to the Park City Railway Company to operate a street railway upon the streets of the city and the roads of the county in contiguous outlying territory. It executed a mortgage to the appellant in that case, as trustee, to secure bonds issued for borrowed money, and the action was filed to enforce that mortgage while the privileges granted were in force and long before the time limit had expired. The local public was extremely interested in the continued operation of the street railway local system, and the owners of the bonds were willing to take a named price below their face value in satisfaction of the mortgage. It was demonstrated that there was difficulty in finding a bidder for the property who would continue to operate it, or whether or not one could be found who would not junk the local system after his bid became final and obligatory. In the circumstances, as affected by the many facts set out in the opinion, *this* court (not the circuit court) directed that upon a return of the case the property should be offered for sale "as a going concern [at upset price of twenty-one thousand dollars] with an obligation upon the part of the purchaser to continue its operation." But that if no such purchaser could be found who would pay that price *and* agree to operate the system, then the property should be put into the hands of a receiver who should operate it for a year, and if after that time it should be demonstrated that it could not be done at a reasonable profit the property should then be sold with the right of the purchaser to junk the material.

The alleged upset price in that directed order was the one that the bondholders were willing to accept in payment of his or their debts, and for which reason his or their rights would be protected under such an order; while at the same time the desires as well as

the necessities of the local public would be preserved, at least during the testing period of one year. No one interposed any objection to that directed order, and none of its provisions operated to compel the lienholder to satisfy his debt by taking title to the property in lien and canceling all rights of a deficiency judgment against his debtor. The latter consequence (which is the one we have here) not only invades the provisions of the statutes hereinbefore referred to, but also is in conflict with section 376 of our Civil Code of Practice, saying: "In an action to enforce a mortgage or lien, judgment may be rendered for the sale of the property and for the recovery of the debt against the defendant personally." There would be no necessity for a personal judgment against the defendant, as is authorized by that section, if the plaintiff therein was compelled to satisfy it by accepting the property in lien.

Other marked differentiating features separate the facts of this case from those involved in the Potter Matlock Case, supra, and which are set forth in our opinion rendered therein. Nothing therein directed to be done was designed to or went any further than to reasonably demonstrate how the property in lien could be sold so as to realize enough to satisfy the creditor and at the same time continue to furnish the public with the benefits of the utility. The scheme embodied in the direction in no manner, except perhaps temporarily, affected the substantial rights of any party to the litigation, but at most was an effort on the part of this court, without any one objecting thereto, to accommodate all parties concerned and without materially harming any. It was an equitable direction on the part of this court based exclusively upon the peculiar facts of the case and was never intended as a permanently substituted procedure of the court for, or instead of, or in lieu of, the one provided by the statutes supra; and which was altogether different with the trial court in this case in the making of the orders complained of.

For the reasons stated the judgment containing the order of sale was and is erroneous because of the illegal direction of the upset price contained therein. Its presence in the order of sale had the effect to deter bidders for the property at the sale made by the commissioner, since they might have been willing to pay more than the $3,000 bid made by plaintiff, but unwill-

ing to pay as much as the amount of the judgment which the court in its erroneous order required to be done. It is therefore apparent that the sale made and reported should not be confirmed, but the judgment should be modified by striking therefrom the requirement as to the bid that should be accepted and a new sale made, which the court will order done upon a return of the case.

Wherefore, the judgment is reversed, with directions to re-enter it as modified herein, and for other proceedings consistent with this opinion.

The whole court sitting.