## Vittitow v. Keene et al.

(Decided June 19, 1936.)

GEORGE S. WILSON, Jr., for appellant.

CARY, MILLER & KIRK for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Mrs. Clara H. Keene died testate on November 27, 1930, a resident of Daviess county, Ky. Her estate consisted of some personalty, a $50,000 life insurance policy with the Mutual Life Insurance Company of New York, and a number of parcels of real estate, some of which was improved and some unimproved city property, and the remainder of which consisted of farming lands in rural sections of her county. She directed that her debts be paid out of her personalty, including her life insurance, and then made separate specific gifts of certain articles of her personal property to her three living children. Item 3 of the will says: "All the remainder of my estate, real and personal of whatsoever kind and wheresoever

situated, I will and devise equally share and share alike, to my three children, Clara McCreery Keene, Robert Perkins Keene and Alderson Tate Keene, each child taking his interest in the estate so devised during his natural life only. If any one of my said children shall die without issue living then the share of the one so dying shall go to the survivor or survivors of the three for life. If all three of my said children shall die without issue, then at the death of the last living of said children, I desire that said property shall be divided equally between my cousins, Elizabeth Matthews Boone and Kitty Stuart Holbrook, each of them taking one-half thereof.''

The next item (4) postpones the division of her estate among her three children, as life tenants, until the youngest of them arrives at the age of 21 years, when a division might be had, and each of them was then given ''the right from that time forward to possess, manage, and control his share as long as he shall live.'' Other provisions which have no bearing upon the questions here involved were made, and in item 7 the testatrix said: ''I do not desire that any of my property shall be sold for reinvestment, or for any other purpose, as long as one of my three children hereinbefore named shall be living, and I hereby expressly prohibit any such sale being made.'' The son of the testatrix died without leaving issue and unmarried. According to the terms of the will the two surviving children shared all of the property for and during their natural lives as a consequence of his death without issue. The personal property of the testatrix, plus her insurance, was insufficient to pay her debts by something in the neighborhood of $25,000, and it was secured by mortgages on some of the improved real property in condition to produce income, but the vacant city property of which there was a considerable portion was and is nonincome producing. On the contrary, it was and is a burden upon that which did produce income because of taxes, city improvements, and other expenses.

In the circumstances and under the conditions, the two surviving children, the appellees and plaintiffs below, entered into a written contract with the appellant and one of the defendants below, J. A. Vittitow, by which

they agreed to sell and convey to him a city lot, carved out of a larger parcel of unimproved city property, for the consideration of $1,000 which he agreed to pay on condition that they could convey to him a good. title; but before executing and tendering a conveyance to him they filed in the Daviess circuit court this declaratory judgment action against him and the other defendants, the appellees Elizabeth M. Boone and Kitty Stuart Holbrook and their husbands (the alternative devisees under the executory devise contained in item 3 supra of the will), and in their petition they alleged that, because of the nature of the property (which was real estate exclusively) and its condition the expenses in keeping up that which was income-producing, and the payment of taxes on that which was nonproductive of income, plus expenses of interest and installments on the unpaid balance of the debts secured as stated, they were reaping comparatively no net income, and that the probabilities were that such conditions would continue so as to practically deprive them of the benefits of their life interests unless the debt could be paid by a sale of the nonproductive or vacant property, and thereby relieve that which was productive of the burden of the debt. They further alleged that if the property which they desired to sell for the stated purpose (a part of which was the lot conveyed to Vittitow) should be sold at decretal sale, it would bring much less than if they (or all of the living devisees who were in esse) could make the sale privately, and they asked that the court decree their right to sell the property privately upon conditions that the proceeds be applied to the extinguishment of the balance of the mortgage indebtedness.

The two contingent devisees (defendants under the executory devise contained in the will) filed a pleading consenting to such a decree; but Vittitow demurred to the petition, which the court overruled. He then filed an answer in which he questioned the right of any or all of the living devisees to make the sale of the property at private sale, and also their right to sell it at all under the prohibitory language contained in item 7 of the will. Following motions and pleadings made the issues, and, after evidence taken in substantiation of the allegations, the court rendered judgment in ac-

cordance with its prayer, and from that judgment Vittitow alone has appealed.

Learned counsel for appellees in support of the judgment urge upon us what they designate as the broad powers of equity in what they term emergency conditions, such as those claimed to be asserted in the petition and proven by the testimony; but we do not stop to discuss any of those matters, since so far as the purposes of this case are concerned all of the arguments might be admitted and still the judgment be unauthorized. The equity principles for which they contend cannot be given effect, nor may they be resorted to when to do so would be in direct conflict with settled legislatively enacted rules of practice approved and followed by courts of equity from an ancient day to the present time. The latter statement—limiting what might otherwise be considered as coming within the broad powers of equity tribunals—was completely approved by us in the recent case of Federal Land Bank of Louisville, Kentucky, v. Crombie, 258 Ky. 383, 80 S. W. (2d) 39, and which was also done by us in cases prior to that opinion, and which are cited therein. Besides domestic cases, other foreign ones and texts from recognized authorities are also therein referred to with excerpts therefrom in substantiation of the conclusions therein reached.

Beginning with section 489 and extending to and including section 498 of our Civil Code of Practice, provision is made for the sale of real estate (where it is required to be done through a court procedure) and in which every situation wherein it may be done is provided for. The one peculiarly applicable to the facts of this case is section 491a of the Code and its subdivisions, all of which we interpret as applicable to this case. But the sale therein authorized must be a public one and be conducted and executed in the manner that such sales are made. It is argued in brief, however, that the provisions of that section do not apply to the facts of this case for the two reasons: (a) That the will under consideration does not dispose of the remainder after the exhaustion of the interest of the life tenants leaving issue surviving and that their issue, if there shoud be any, would take the remainder, not as devisees under the will, but as heirs

of their grandmother, the testatrix; and (b) that there is at present no issue of any of the children of testatrix in esse, and that there is only a possibility that such contingent remainderman will ever be born.

The case of Renaker v. Tanner, 260 Ky. 281, 83 S. W. (2d) 54, 56, effectually disposes of reason (a), even if it should be regarded as a meritorious one without the interpretation made in that case. Our opinion in that case construed a will couched in language almost exactly as that of the will of Mrs. Keene, and in it we held that the future takers, though not in esse, derived title through the will as remaindermen, the same as if it had been so expressly directed in the will, and which conclusion was based upon the inevitable inference of the testator's intention, necessarily implied from the language employed as viewed in the light of the dispositions made. In expressing that conclusion, we employed this language: "Although there is much authority to the contrary, based upon a very strict policy of implying no disposition in a will, we are of the opinion that, where the devise is to one for life, then to a remainderman in case the life tenant die without issue, and there is no express disposition of the remainder should he die with issue, as here the necessary implication is that the remainder is devised to the life tenant's issue. Otherwise in the instant case it must be said the testator had the extraordinary intention of leaving the children of each life tenant no part of or interest in the estate given their parent, but leaving them (as survivors) a remainder interest in the property given their uncle and aunt and having their parent's patrimony revert to testator's estate and go down as intestate property. And, if all should die with issue, there would be a reversion of the entire state. The presumptions of complete testacy and nondisherison fortify an implication of the devise of the remainder in fee to the issue of the life tenant. Newcomb v. Fidelity Trust Company, 108 S. W. 911, 33 Ky. Law Rep. 41; Froman v. Froman, 175 Ky. 536, 194 S. W. 809; Bourne v. Johns, 233 Ky. 448, 26 S. W. (2d) 13; 23 R. C. L. 493; Close v. Farmers' Loan & Trust Co., 195 N. Y. 92, 87 N. E. 1005; Anderson v. Messinger (C. C. A.) 146 F. 929, 7 L. R. A. (N. S.) 1094; Conner v. Gardner, 230 Ill. 258, 82 N. E. 640, 15 L. R. A. (N. S.) 73; Ball.

v. Phelan, 94 Miss. 293, 49 So. 956, 23 L. R. A. (N. S.) 895; Beilstein v. Beilstein, 194 Pa. 152, 45 A. 73, 75 Am. St. Rep. 692. The conclusion therefore, must be that the devise of the property involved is to Mrs. Tanner for her life, with the remainder vesting in her children as a class, the members of which cannot be determined until her death. Section 2344, Ky. Stats.; Hurst v. Russell, 257 Ky. 78, 77 S. W. (2d) 355; Underhill v. United States Trust Co., 227 Ky. 444, 13 S. W. (2d) 502.'' We still approve that interpretation as bottomed upon like facts to the instant ones, and which disposes of reason (a) adversely to the argument of the learned counsel.

Section 491a, supra, of the Civil Code of Practice, itself answers reason (b), since it provides for a sale of the property even where there are contingent future interests in remainder, and, by necessary implication it embraces situations where the contingent remaindermen (who are the potentially unborn children of the two children of testatrix) are yet unborn, since it prescribes for a decretal sale in an action in which ''all persons in being having any interest in such estate being made parties to the action.'' That exact situation exists here, both with reference to the condition of the title, and with reference to those who are made parties to the action, and we entertain no doubt but that the court could legally decree a sale of the property sought to be sold by this action under the petition as drawn, and the testimony that was introduced; but such a sale would necessarily have to be made in the manner that has universally been approved, prescribed, and followed, and not by private inter partes agreement, though approved by the court, but which latter was the character of sale approved by the judgment in this case.

The objection of the defendant, Vittitow, that item 7 of the will of testatrix, forbidding a sale of the property as therein prescribed, prevents the sale of any of it either privately or by judicial decree, can not be sustained. The sale in this case, if made in any manner, would be for the purpose of paying debts of the estate, and it is incompetent for a testator to provide against a sale for that purpose, even though it be attempted. If this action had been one to settle the

estate by selling enough of the property to pay its debts, we entertain no doubt that it would have been competent for the court to have decreed the sale of nonproductive and vacant property in preference to that which was productive of profit, although the debts may have been secured by mortgages on the latter, and which would have the effect of requiring such nonproductive property to shoulder the burden of the indebtedness so as to relieve the productive property of the encumbrance.

Section 2150a in Baldwin's 1933 Supplement to Carroll's Kentucky Statutes, which was enacted by chapter 146 of the 1930 legislative session, has no application to this case, as will be readily seen from a reading of it. However, it is persuasive that the conclusion hereinbefore expressed, as to the necessity for a decretal sale, is the correct one, since if the general equity powers of courts as contended for by learned counsel for appellees were sufficient to authorize and approve a private sale in the circumstances of this case, it would necessarily follow that they could have acted in like manner in ordering private sale of infants' real estate without the enactment of the section of the statute referred to. The Legislature, however, thought otherwise, and concluded that express authority was required, in the case of the sale of infants' real estate at private sale, and so provided in that section. No such statutory provision is made applicable to a state of facts here presented, and we are convinced that the court erred in approving the private sale made to Vittitow by the two life tenants under the will of Mrs. Keene.

It may be true that there may be some slight variation of prices between that which would be realized by a private sale and what would be obtained at a decretal one, but that is a consequence that might or might not happen. The witnesses who testified in this case gave it as their opinion that it would happen, and that a substantially better price could be realized by making a private sale of the property; but whatever may be the true facts with reference to that question, and howsoever desirable it might be to adopt the private sale method of extinguishing the debts of the estate, we conclude that courts are not authorized to ignore well-established and long-followed rules of practice in

order to accommodate the desires of plaintiffs in an effort to circumvent the imaginary and surmised disadvantages of a decretal sale.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside for proceedings not inconsistent with this opinion.

The whole court sitting.