RENDERED: MARCH 22, 2018
TO BE PUBLISHED

$\mathfrak{Supreme}$ $\mathfrak{Court}$ $\mathfrak{of}$ $\mathfrak{Kentucky}$ FINAL

DATE 4/12/18 _Kim Redmon, DC_

2016-SC-000677-DG

HARRY L. SEEGER                                          APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.        CASE NOS. 2013-CA-001591-DG AND 2013-CA-001661-DG
NELSON CIRCUIT COURT NO. 12-XX-00010


SHARON LANHAM                                            APPELLEE


AND


2017-SC-000146-DG


SHARON LANHAM                                       CROSS-APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.        CASE NOS. 2013-CA-001661-DG AND 2013-CA-001591-DG
NELSON CIRCUIT COURT NO. 12-XX-00010


HARRY L. SEEGER                                     CROSS-APPELLEE


**OPINION OF THE COURT BY JUSTICE KELLER**

**AFFIRMING IN PART, REVERSING IN PART AND REMANDING**

Both parties appeal separate holdings of the Court of Appeals. This

action originated as a paternity action pursuant to Kentucky Revised Statute

(KRS) 406.021 in the Nelson District Court. The issues before the Court have been consolidated into one action. We now address each issue in turn and affirm in part and reverse in part the holding of the Court of Appeals.

## I. BACKGROUND

Harry Seeger ("Seeger") and Sharon Lanham ("Lanham"), while each married to other partners, engaged in a relationship leading to the birth of a child on June 13, 2007. On December 30, 2009, Lanham filed a paternity action. In January 2011, during the pendency of the action to resolve child support and other issues, Seeger retired and began receiving Social Security Retirement Income of $1,969.00 per month. As a result, Seeger and Lanham's child also began receiving monthly dependent benefits in the amount of $1,204.00 in November 2011. In May 2012, the Nelson District Court, Paternity Division, entered its final findings of fact, conclusions of law, and judgment. Relevant to this appeal are three conclusions and judgments: (1) the court had jurisdiction to hear the case pursuant to KRS 406.021[1]; (2) the child's Social Security benefit payments *above* the current child support order would be credited to the pre-petition liabilities Seeger was ordered to pay ($795.00 of the $1,204.00 monthly payment was considered "excess" as current support was ordered for $409.00 per month); and, (3) in a separate opinion and order entered August 23, 2011, that there was no statutory avenue for attorneys' fees as Lanham had requested.

---

[1] This issue was also resolved pursuant to Seeger's motion to dismiss for lack of jurisdiction and the Court's subsequent order. The grounds addressed are the same grounds raised in the appeal and will be discussed herein.

2

Lanham first appealed several issues to the Nelson Circuit Court. As to the issues presented in this appeal, the Nelson Circuit Court found that it was error for the district court to credit the social security benefits to the pre-petition liabilities owed by Seeger but that it had not erred in holding attorneys' fees were inappropriate in this case.[2] Both parties then appealed to the Court of Appeals. The Court of Appeals held that the trial court may, in its discretion, apply excess social security retirement dependent benefits to pre-petition liabilities. The Court of Appeals also held that Lanham's argument for attorneys' fees was sound, and remanded to the district court to assess whether, under KRS 403.220, Lanham was entitled to attorneys' fees.

Both parties have moved this Court for discretionary review on separate issues. We have granted discretionary review in both cases and now address each issue presented to this Court.

## II.    ANALYSIS

### A.    A paternity action can be brought by a private attorney.

Seeger first argues that the district court lacked the jurisdictional authority to even hear this paternity case pursuant to KRS 406.021. As this question would be dispositive were we to rule in Seeger's favor, we will address it first. To address this issue, we must analyze questions of law, including statutory interpretation. We conduct such analysis *de novo*, with no deference to the analysis of the lower courts. *Commonwealth v. Love*, 334 S.W.3d 92, 93 (Ky. 2011) (citing *Commonwealth v. McBride*, 281 S.W.3d 799, 803 (Ky. 2009)).

---

[2] The jurisdictional issue was not addressed again until appeal to this Court.

3

There are three separate types of jurisdiction: personal jurisdiction, subject-matter jurisdiction, and jurisdiction over a particular or specific case before the court. *See Nordike v. Nordike*, 231 S.W.3d 733, 737-38 (Ky. 2007) (citing *Milby v. Wright*, 952 S.W.2d 202, 205 (Ky. 1997) and *Covington Trust Co. of Covington v. Owens*, 129 S.W.2d 186, 190 (Ky. 1939)). "[J]urisdiction over the *particular* case at issue ... refers to the authority and power of the court to decide a *specific* case, rather than the class of cases over which the court has subject-matter jurisdiction." *Nordike*, 231 S.W.3d at 738 (quoting *Milby*, 952 S.W.2d at 205) (emphasis original). This jurisdictional requirement can often turn on the failure of a party to meet certain statutory requirements in bringing a suit. *See Nordike*, 231 S.W.3d at 738. As such, it is this brand of jurisdiction which Seeger claims that the district court lacked in hearing this case.

KRS 406.021(1) states that paternity actions "shall be brought by the county attorney or by the Cabinet for Health and Family Services or its designee upon the request of complainant ... " Seeger argues that the word "shall" in the statute is dispositive of the jurisdictional issue. Because Lanham chose to hire a private attorney to initiate this paternity action, he argues that there is no statutory authority allowing a private attorney to bring a paternity action under this chapter. His reading of the statute requires that *all* paternity actions be brought by the Cabinet or County Attorney.

We agree with the generally mandatory meaning of the word "shall" in statutory interpretation. *See Alexander v. S & M Motors, Inc.*, 28 S.W.3d 303,

4

305 (Ky. 2000) (citing KRS 446.010(2)). However, the rest of the sentence in KRS 406.021(1) must be acknowledged: the action "shall be brought by the county attorney or by the Cabinet ... *upon the request of complainant* ... " (emphasis added). The term "shall" is mandatory here, but mandatory as to what the County Attorney or Cabinet *must* do when requested. In other words, when the complainant (mother, putative father, child, or any other party authorized under KRS 406.021(1)) seeks the assistance of the County Attorney or the Cabinet in proceeding with a paternity action, the County Attorney or Cabinet shall proceed in bringing the necessary paternity action.

However, the term "shall" is *not* mandatory as to how the complainant must proceed, be it through government agency action or by hiring a private attorney. Seeger cites to an unreported case in which the Court of Appeals affirmed dismissal of a paternity action. The Court of Appeals stated that the father, "in this jurisdiction, must bring the action through the above government entities," listed in the statute. *J.I. v. J.B.*, No. 2007-CA-002428, 2008 WL 2219912, *3 (Ky. App. May 30, 2008). However, this Court has stated that the paternity action "may be brought by and prosecuted by the mother, child, person or agency substantially contributing to the support of a child *by an attorney of their own choosing.*" *Commonwealth ex rel. Stumbo v. Wilson*, 622 S.W.2d 912, 914 (Ky. 1981) (emphasis added). "[T]he county attorney gets into the case only when so requested by the complainant." *Id.* However, upon such a request, "the county attorney is obligated to" initiate the action. *Id.*

5

We must look first to the plain language of a statute and, if the language is clear, our inquiry ends. *See Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005). Based on the plain language of the statute, we hold that complainants under KRS 406.021 are authorized to bring a paternity action through private counsel, if they so choose. Only when a complainant requests assistance from the County Attorney or the Cabinet must those agencies proceed in bringing the paternity action. We therefore affirm the finding of the district court that it was empowered with the jurisdiction to hear the paternity action as brought by Lanham. Thus, seeing no jurisdictional bar to Lanham's claims, we now proceed to the substantive issues on appeal.

**B.    Attorneys' Fees are *not* recoverable in paternity actions.**

Lanham moved the Nelson District Court to award attorney fees. As the basis for her motion, Lanham cited to KRS 406.051. The statute states that "[a]ll remedies under the uniform reciprocal enforcement of support act are available for enforcement of duties of support under this chapter." She linked this provision to KRS 407.5313, which states that "[a]ttorney's fees may be taxed as costs, and may be ordered paid directly to the attorney ... " The district court denied the motion, finding that KRS 406.051 specifically referred to the enforcement of judgments and duties of support. The district court also found that, had the legislature intended attorneys' fees to be recoverable, it would have created a specific statute allowing so, similar to KRS 403.220, which allows attorneys' fees for maintaining or defending dissolution proceedings.

6

On appeal, the Nelson Circuit Court similarly held that the remedies referenced in KRS 406.051 are limited to those "provided for the enforcement of previously entered judgments under a statutory framework designed to facilitate reciprocal recognition of support orders from other states." Citing a Latin maxim meaning that "the expression of one thing implies the exclusion of the other," the circuit court concluded that the legislature did not intend to provide a statutory avenue for attorneys' fees in paternity actions.

On appeal to the Court of Appeals, Lanham reiterated her argument that KRS 406.051, referencing Chapter 407, provides an avenue for attorneys' fees to be awarded. However, she also argued that KRS 406.025, which permits child support orders in paternity actions to be based upon the guidelines encoded in KRS 403.212, therefore confers upon a paternity action the applicability of KRS 403.220. KRS 403.220 permits a trial court to "order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding *under this chapter* and for attorney's fees ... " (emphasis added). The Court of Appeals held that the specific reference in the trial court's order to KRS 403.212 imbued it with the power under KRS 403.220 to order attorneys' fees. It remanded the case to the district court to determine whether Lanham was entitled to such an award. The Court of Appeals limited its holding to this fact-specific case in which there was a request for child support pursuant to KRS Chapter 403. We shall address each of the potential statutory bases presented by Lanham in turn. Once again, we

7

are faced with an issue of statutory interpretation and review the issue *de novo*. *Love*, 334 S.W.3d at 93 (citing *McBride*, 281 S.W.3d at 803).

### 1) KRS 403 *does not* provide an avenue for a party in a paternity action to recover attorneys' fees.

KRS 406.025(5) specifically requires the trial court to utilize the child support guidelines in KRS 403.212 in ordering temporary child support.[3] KRS 406.051(2) also requires the district court to "utilize the provisions of KRS Chapter 403 relating to child custody and visitation."[4] Clearly, the crafters of KRS 406 inferred that KRS 403 would be helpful and instructive in determining issues under KRS 406 actions. However, this does not necessarily mean that the instructive value of KRS 403 thereby makes the entire chapter applicable to paternity actions under KRS 406. KRS 403 was adopted from the Uniform Marriage and Divorce Act, whereas KRS 406 was based on the Uniform Act on Paternity. Each act clearly addressed differing goals: the former to provide instruction on dissolution of marital relationships and the second to provide an avenue for a child to receive support from a putative parent when that child was born outside the confines of marriage. Thus, it is very well within the realm of possibility that certain procedures or provisions of one chapter may be entirely inapplicable to the other.

---

[3] "The court shall, within fourteen (14) days from the filing of the motion, order an amount of temporary child support based upon the child support guidelines as provided by KRS 403.212. ... " KRS 406.025(5).

[4] "The District Court may exercise jurisdiction, concurrent with that of the Circuit Court, to determine matters of child custody and visitation in cases where paternity is established ... . The District Court, in making these determinations shall utilize the provisions of KRS Chapter 403 relating to child custody and visitation. ..." KRS 406.051(2).

8

The relevant statute in Chapter 403 is KRS 403.220, which states that "[t]he court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees ... "

> The purpose of the fee-shifting statute, we have noted, is simply to ensure the fairness of domestic relations proceedings: 'to prevent one party to a divorce action from controlling the outcome simply because he or she is in a position of financial superiority,' [*Neidlinger v. Neidlinger*, 52 S.W.3d 513, 521 (Ky. 2001)], and 'to equalize the status of the parties to a dissolution proceeding ... in an effort to eliminate the inequities resulting from the termination of the relationship.' [*Sullivan v. Levin*, 555 S.W.2d 261, 263 (Ky. 1977)(*overruled on other grounds by Hale v. Hale*, 772 S.W.2d 628 (Ky. 1989))].

*Rumpel v. Rumpel*, 438 S.W.3d 354, 363 (Ky. 2014). Based on this statute, "trial court[s] enjoy[] a broad discretion ... to allocate costs and award fees[.]" *Rumpel*, 438 S.W.3d at 363 (citing *Wilhoit v. Wilhoit*, 521 S.W.2d 512, 514 (Ky. 1975)). This Court has noted that the fee-shifting structure "is not intended primarily to be punitive or sanctioning. It is intended ... to ensure that dissolution and child-custody proceedings are fair and not skewed in favor of the party in the financially superior position." *Rumpel*, 438 S.W.3d at 364. This Court noted the specific and unique nature of "domestic relations proceedings" as "often charged with bitter contentiousness" and being "particularly susceptible to domineering tactics and manipulation by the side with the deeper pockets." *Id.* at 365. Thus, "the main concern is simply to

ensure that the proceedings do not impose an unreasonable or an unfair burden on the party with fewer financial resources." *Id.*

At this juncture, we cannot hold that the purpose of KRS 403.220 applies to paternity actions. While it may seem perfunctory, we are constrained to the plain language of the statute, if that statute is clear. When examining the plain language of a statute, "[w]here there is no ambiguity in the statute, there is no need to resort to the rules of statutory construction in interpreting it. The words of the statute are simply accorded their commonly understood meaning." *Stewart v. Estate of James Cooper,* 102 S.W.3d 913, 915-16 (Ky. 2003) (quoting *Regional Jail Auth. v. Tackett,* 770 S.W.2d 225, 229 (Ky. 1989)). KRS 403.220 clearly states that a trial court may "order a party to pay a reasonable amount for the cost to the other party of maintaining or defending *any proceeding under this chapter* and for attorney's fees ... " (emphasis added). We cannot ignore this clear language which triggers the trial court's discretion to award attorney's fees in cases proceeding under KRS Chapter 403.

Lanham valiantly attempts to tie KRS 403 to 406 by means of multiple references in Chapter 406 to the child support guidelines in KRS 403. However, KRS 403 guides practitioners and courts in the dissolution of marriage and divorce. It is not a chapter solely devoted to the child support tables and guidelines. If it were, Lanham's argument may bear more weight. However, this action was simply not an action under KRS 403; it was, properly, a proceeding pursuant to KRS 406. We hold that the references to use of the

child support tables is insufficient to make this action one "under this chapter" of KRS 403. As such, the attorneys' fees provision in KRS 403.220 is inapplicable to Lanham's paternity action. We, therefore, reverse the opinion of the Court of Appeals as to this holding.

### 2) KRS 407 *does not* provide an avenue for a prevailing obligee to recover attorneys' fees in a paternity action.

As we reject the argument made by Lanham that was accepted by the Court of Appeals, we will address the alternative argument she made in the courts below. KRS 406.051 states that "All remedies under the uniform reciprocal enforcement of support act are available for enforcement of duties of support under this chapter." While the Nelson Circuit Court deemed that this final sentence "clearly refers to the remedies provided in KRS 407," we are inclined to further examine to what exactly the legislature was inferring.

The Uniform Reciprocal Enforcement of Support Act ("URESA") was a model act drafted by the National Conference of Commissioners on Uniform State Laws ("NCCUSL") "[i]n response to the need for a simple, inexpensive, and consistent interstate approach" in child support proceedings. Office of Child Support Enforcement, U.S. Department of Health & Human Services, ESSENTIALS FOR ATTORNEYS IN CHILD SUPPORT ENFORCEMENT 330 (3rd ed. 2002) (available at https://www.acf.hhs.gov/css/resource/essentials-for-attorneys-in-child-support-enforcement-3rd-edition)(last accessed Jan. 29, 2018). URESA was amended in 1952, 1958, and 1968. *Id.* at 331. The 1968 amendments were referred to as the Revised Uniform Reciprocal Enforcement of Support Act ("RURESA"). *Id.* "All States and U.S. territories enacted some

11

form of URESA or similar legislation" although some "modified or omitted certain provisions to comply with their own State laws on procedure and enforcement." *Id.* Thus, despite the object, URESA "was therefore never truly uniform." *Id.* Based on the need for major changes, NCCUSL developed the Uniform Interstate Family Support Act ("UIFSA") in 1989. In 1996, Congress required states to enact UIFSA in its most current form in order to receive federal funds. *Id.* at 333. Although URESA was considered revolutionary when first enacted, UIFSA was enacted to address multiple shortcomings. *Id.* at 334-35. Thus, although some provisions may be similar, UIFSA includes multiple provisions that are strikingly new or different than URESA or RURESA. *See generally id.* at Chapter 12.

KRS 406.051 was first enacted in 1964, undergoing amendments and reenactments in 1976, 1984, and 1996. In 1964, Kentucky's statutes included Chapter 407, entitled the Uniform Support of Dependents Act. Although Kentucky's legislature titled it differently than URESA, it seems to be based in part or in whole on URESA. Additionally, our courts have referred to UIFSA as replacing URESA in our statutory scheme. *See Lichtenstein v. Barbanel*, 322 S.W.3d 27, 35 (Ky. 2010) ("The United States Congress required that every state adopt [UIFSA] by January 1, 1998. ... Kentucky adopted the UIFSA on January 1, 1998, replacing [URESA].").

At the time that KRS 406.051 was enacted, the Uniform Support of Dependents Act had no provision regarding attorney fees. It was only with the passage of UIFSA that the Kentucky legislature created a statutory avenue for

12

the recovery of attorneys' fees in KRS 407.5101. Thus, we must question whether the legislature intended to allow a remedy that had not theretofore been created when it enacted KRS 406.051. Our answer must, logically, be no.

While the reference to KRS 407.5101 seems strong, KRS 407.5101 is *not* a remedy under URESA. As such, the remedies referenced in KRS 406.051 cannot include the option for attorneys' fees. We question the legislature's decision to single out paternity actions as the only cause of action related to domestic matters in which there is no statutory basis for the shifting of fees. However, it is the duty of the General Assembly to legislate, and it is our duty to *interpret* such legislation. As such, we must hold that KRS 406.051 also fails to provide Lanham the statutory basis necessary for the award of attorneys' fees in this case.

### 3) A court is no longer imbued with equitable power to award attorneys' fees.

The Court of Appeals made passing reference to the fact that neither of the parties claimed attorneys' fees as a matter of equity and only addressed the statutory bases presented by Lanham. The courts of the Commonwealth were previously empowered to award attorneys' fees as an equitable measure, when, within the discretion of the court, it was deemed appropriate. *See Dorman v. Baumlisberger*, 113 S.W.2d 432, 433 (Ky. 1938) and *Kentucky State Bank v. AG Serv., Inc.*, 663 S.W.2d 754, 755 (Ky. App. 1984) (citing *Dorman*, 113 S.W.2d at 433). However, in *Bell v. Commonwealth*, this Court determined an equitable

13

award of attorneys' fees was inappropriate. *See* 423 S.W.3d 742, 750 (Ky. 2014).

"Historically, courts ruled based on the common law, code or statutory law, and equity." *Id.* at 747. However, "[e]ventually, at least in most states, the courts of equity and law were combined ... " *Id.* As courts are now empowered by statutory and rule-based law, "those rules are also binding. Equity practice, in general, is merged with law, or the statutory provisions. Only when there is no law or precedent does a court have the authority to exercise pure equity." *Id.* (citing *Vittitow v. Keene*, 95 S.W.2d 1083, 1084 (Ky. 1936)). Thus, "[l]aw trumps equity." *Bell*, 423 S.W.3d at 748. Under the American rule, "attorney's fees in Kentucky are not awarded as costs to the prevailing party unless there is a statute permitting it or as a term of a contractual agreement between the parties." *Id.* While attorneys' fees are awardable as a sanction "when the very integrity of the *court* is in issue," *id.* at 749 (emphasis original), "trial courts may not award attorney's fees just because they think it is the right thing to do in a given case." *Id.* at 750.

Thus, we take this opportunity to clarify that, without a sound basis in contract or statute, a trial court may not award attorneys' fees. The trial court is still empowered to order a party to pay attorneys' fees as a sanction, but only when the integrity of the court is at stake.

14

**C.    The trial court must make additional findings before crediting the excess social security income payments to the pre-petition liabilities.**

Lanham and Seeger's child began receiving a monthly Social Security dependent benefit of $1,204 per month in November 2011. The Nelson District Court, in an order dated after the child began receiving these benefits, set current support obligation for Seeger at $409 per month. The district court also ordered that the dependent benefits be applied to current support, leaving an extra monthly benefit of $795.

The Nelson District Court also ordered that Seeger pay a statutory liability of $46,820 for birthing expenses, child care costs, pre-petition child care costs, and pre-petition KRS 403.212 child support (hereinafter referred to as "pre-petition liabilities"). The district court specifically found that Seeger's "statutory liability for birthing expenses, child care costs and child support shall be deemed satisfied by the social security benefits paid to [Lanham] for the benefit of the Subject Child which are in excess of [Seeger]'s KRS 403.212 base monthly child support obligation." The court cited to the Court of Appeals decision in *Miller v. Miller*, 929 S.W.2d 202 (Ky. App. 1996), as the jurisprudential basis of its decision.

Upon appeal, the Nelson Circuit Court remanded back to the district court for further findings. The circuit court stated that "[a]pplying the rule in *Miller*, Seeger may receive the benefit of the 'excess' dependent benefit payments to pay the arrearage accruing between the date of his retirement and the date the child received the first dependent benefit payment." Seeger retired

15

in January 2011 and the child began receiving monthly benefits in November 2011. Thus, from January to November 2011, the excess payment could be credited toward the pre-petition liabilities. However, "the remaining arrearage cannot be paid through the benefit payments." Thus, the circuit court remanded to the district court to apportion the credit accordingly.

The Court of Appeals also addressed the issue and held that a trial court may, "in its discretion," "apply excess social security retirement dependent benefits as a credit against the pre-petition ... liabilities a father incurs when a paternity action is initiated before a child turns four years old." Although we ultimately agree with the Court of Appeals and affirm its holding, we believe further guidance is necessary for trial courts to utilize when making this discretionary decision.

In reviewing this issue, we have a dual standard in our review. First, we must determine whether this credit is even permissible under the appropriate law. This being a purely legal issue, we review it *de novo*. *Jones v. Hammond*, 329 S.W.3d 331, 335 (Ky. App. 2010) (citing *Revenue Cabinet v. Comcast Cablevision of the South*, 147 S.W.3d 743 (Ky. App. 2003)). If the trial court utilized its discretion and applied the correct standard,[5] then we must determine whether its ultimate decision was an abuse of discretion. *Downing v. Downing*, 45 S.W.3d 449, 454 (Ky. App. 2001) (citing *Goodyear Tire & Rubber*

---

[5] The findings of fact here have not been questioned. Such facts would be reviewed under a clear error standard. *See Miller v. Eldridge*, 146 S.W.3d 909, 915 (Ky. 2004) ("Clear error applies to a review of a trial court's findings of fact[.]").

16

*Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) and *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

First, we shall clarify the issues that are *not* before us today. We are not presented with the issue of whether a benefit payment to a child, be it through government-sponsored retirement or disability benefits, can be used to satisfy a current support order of the non-custodial parent. This Court and the Court of Appeals have already determined that allowing such a satisfaction is well within the trial court's "general authority and discretion to determine child-support questions." *C.D.G. v. N.J.S.*, 469 S.W.3d 413, 421 (Ky. 2015); *see also* *Miller*, 929 S.W.2d at 205-06. Additionally, our courts have already determined that allowing a credit from benefits to the child against arrearages owed by the non-custodial parent at the time the benefits began is wholly inappropriate. *Miller*, 929 S.W.2d at 205 ("As to the remainder of any surplus, it must be considered as a gratuity and not allowed to offset any arrearage for support which accrued prior to the disability. Such an amount constitutes an existing legitimate debt which should never have accrued and for which no credit can now be given ... ").

The issue before us today is narrow. Can a non-custodial parent receive credit for a surplus government benefits payment to the child (received because of the non-custodial parent's status as either retiree or disabled) towards pre-petition liabilities? It is markedly different from the situations we have already decided. It is not a debt which was legally owed or collectable prior to a judgment. But neither is it a payment towards the current support of the

17

child. It is a debt owed for past costs that only become legally due after adjudication and decision by the court. Our decision in this case is limited to such situations.

In making this decision, we have a clash between the interests of the child and those of the non-custodial parent. On one hand, "the primary purpose of ... social security payments ... [is to] meet the *current* needs of the dependents." *Miller*, 929 S.W.2d at 205 (quoting *Potts v. Potts*, 240 N.W.2d 680, 682 (Iowa 1976)) (emphasis added). It would therefore seem inconsistent to allow a portion of those payments to pay off old debts, even if those debts were not legally enforceable when they arose in relation to the care of the child. But, we also recognize that "[r]etirement benefits are ... income from a government-required investment, the benefits of which are realized only after a certain age. And dependent benefits are like the income of an investment trust or an annuity whose benefits are paid to a third party[.]" *C.D.G.*, 469 S.W.3d at 420 (citing *Van Meter v. Smith*, 14 S.W.3d 569, 573 (Ky. App. 2000)). Thus, but for the non-custodial parent's payment into the federal government system, the child would not be receiving these benefits. "[S]ince the obligor has paid in advance for these benefits over the years (albeit mandatorily), they should be recognized as the fruits of his labor." *Children & Youth Servs. v. Chorgo*, 491 A.2d 1374, 1377 (Pa.Super. 1985).

Several other jurisdictions have addressed similar issues and tried to determine which of these two parties is entitled to the greater benefit. In Ohio, the courts recognized that "the benefit [of Social Security benefits] inures

18

directly to the child, notwithstanding the prerequisite status of the parent."
*Fuller v. Fuller*, 360 N.E.2d 357, 358 (Ohio App. 1976). In deciding whether
excess benefits could be credited towards the non-custodial parent's accrued
arrearages, the court stated that such a credit would be "in effect, ordering the
children to pay the accrued arrearages for their own support." *Id.* The
Supreme Court of New Mexico was also presented with the issue of whether
these excess payments could be credited towards arrears. *Mask v. Mask*, 620
P.2d 883 (N.M. 1980). It posited that if it:

> [allow[ed] such credits, the defendant would receive a windfall,
> since the delinquent support payments would be made with
> the funds of the social security administration and not with
> his own. If [the court] disallow[ed] the credits, the daughter
> will receive the benefit of the extra payments since she will
> receive not only the support arrearages but also the monthly
> social security checks.

*Id.* at 886. Faced with this conundrum, the court determined that "[w]hen the
windfall comes, equitably it should inure not to the defaulting husband's
benefit, but to his bereft children." *Id.*

The interests before us are diverse and divergent. Yet, "[a]mong the
highly varied holdings of these and other cases, we find one consistent
similarity: the consideration of equitable factors in an effort to reach a fair and
just result." *Grays v. Ark. Office of Child Support Enf't*, 289 S.W.3d 12, 44 (Ark.
2008). "While general rules and guidelines are desirable for consistency of
results, the trial court must have the ability to fashion its orders around the
contours of specific fact situations." *Chorgo*, 491 A.2d at 1378. We agree with
the sound reasoning of our sister states and deem that trial courts must be

19

empowered with discretion to equitably determine whether credit for pre-petition liabilities as in this case should be gleaned from excess benefit payments to the child. This resolution is in accord with our recognition of the trial court's "general authority and discretion to determine child-support questions." *C.D.G.*, 469 S.W.3d at 421. Indeed, "[t]here are few matters over which the trial court has more discretion than cases involving domestic relations issues." *Commonwealth ex rel. Marshall v. Marshall*, 15 S.W.3d 396, 400 (Ky. App. 2000). However, we must present the trial courts with some guiding principles to remember in making these decisions.

As in determining whether the guidelines for child support would be "unjust or inappropriate," courts should look to the factors enumerated in KRS 403.211(3) to decide whether the credit as described would be equitably appropriate. Those factors are:

(a) A child's extraordinary medical or dental needs;

(b) A child's extraordinary educational, job training, or special needs;

(c) Either parent's own extraordinary needs, such as medical expenses;

(d) The independent financial resources, if any, of the child or children;

(e) Combined monthly adjusted parental gross income in excess of the Kentucky child support guidelines;

(f) [Agreements to child support differentiating from the guidelines]; and

(g) Any similar factor of an extraordinary nature ... .

KRS 403.211(3). These factors assist the trier of fact in concluding whether the needs of the parties would be equitably served by this credit or would be better

20

served by allowing the excess to go towards the needs of the child. This list of factors is not exhaustive for the trial court's determination; instead, it should serve as a starting point for the court's equitable consideration. The trial court is most familiar with each party's situation and can deem whether there are other factors relevant in each case.

Additionally, our family courts are cognizant of the overarching purpose of child support orders: to benefit the dependent child in question. "The purpose of the [Kentucky child support] statutes and the guidelines ... is to secure the support needed by the children commensurate with the ability of the parents to meet those needs." *Gossett v. Gossett*, 32 S.W.3d 109, 112 (Ky. App. 2000). "Child support is a statutory duty intended to benefit the children, rather than the parents. The right to child support belongs to the child[,] not the parents." *Gibson v. Gibson*, 211 S.W.3d 601, 609 (Ky. App. 2006) (citing *Clay v. Clay*, 707 S.W.2d 352 (Ky. App. 1986) and *Gaines v. Gaines*, 566 S.W.2d 814 (Ky. App. 1978)). Thus, the guiding light in making this decision should be: what best protects the interests and needs of the child?

Thus, we have determined that the trial court is empowered with discretion to determine whether to allow the credit. However, our courts have also acknowledged that the trial court's discretion in these matters is not without some limitation. *Marshall*, 15 S.W.3d at 400 (citing *Keplinger v. Keplinger*, 839 S.W.2d 566 (Ky. App. 1992)). Decisions regarding child support obligations "must be fair, reasonable, and supported by sound legal principles." *Jones*, 329 S.W.3d at 334 (citing *Downing*, 45 S.W.3d at 454). In this case, the

21

trial court found that the "logical extension of *Miller* requires that the statutory liability for pregnancy, confinement, child care, and children's health insurance premiums also be payable from a child support obligor[']s 'excess' social security benefits payments received on behalf of the child being supported" (emphasis added). In essence, the trial court determined that *Miller*'s holding required it to credit these "excess" benefits to the pre-petition liabilities.

There is no such requirement. It is within the court's discretion to determine whether the credit is equitably just under the guidelines we have described. This decision, then, was not "supported by sound legal principles." *See Jones*, 329 S.W.3d at 334 (citing *Downing*, 45 S.W.3d at 454). We recognize that the trial court is in the best position to determine the equitable needs of the parties in this case. As such, we must remand back to the trial court to make further findings of fact and reassess whether the credit in this case is equitable, just, and fair.

### III.   CONCLUSION

In conclusion, we hold that a paternity action pursuant to KRS 406.021 may be brought by a private attorney. Only upon request of the complainant must the County Attorney or the Cabinet bring the petition. We therefore uphold the order of the Nelson District Court that it had jurisdiction over this case. We do, however, reverse the holding of the Court of Appeals that KRS 403.220 provides a statutory avenue for attorneys' fees in this case. Although it is unfortunate for parties proceeding under KRS Chapter 406, the legislature's language at this time is clear. There is no statutory language

22

permitting the award of attorneys' fees under Chapter 406. We affirm the holding of the Court of Appeals that a trial court has the discretionary authority to allow credits of "excess" dependent benefits (over and above any current support ordered by the court) towards pre-petition liabilities. However, rather than simply upholding the Nelson District Court's allowance of the credit, we remand for further factual findings in light of this opinion and a renewed determination of whether that credit is appropriate.

All sitting. Minton, C.J., Cunningham, Hughes, Keller, VanMeter and Venters, JJ., concur. Wright, J., concurs in part and dissents in part by separate opinion.

WRIGHT, J., CONCURRING IN PART AND DISSENTING IN PART: While I agree with the majority's well-reasoned opinion in all other respects, I dissent as to its remand for the trial court to determine whether it would be equitable to offset the father's pre-petition liabilities with the child's "excess" social security income. While I firmly believe that trial courts should be afforded a great deal of discretion in such matters, the child's dependent social security benefits are funds that the federal government has paid for the benefit of the child. How can a state court have the authority to take a child's money to pay an existing debt of the father?

To quote the majority, "the overarching purpose of child support orders [is] to benefit the dependent child in question." In this case, Seeger's current support obligation is set at $409 per month, and his child receives social security benefit of $1204 per month based on Seeger's Social Security

23

retirement. While the amount of the child's dependent social security benefit is greater than the amount of the father's child support obligation, that does not change the fact the funds belong *to the child.* This is clear from the statute providing the entitlement. USC § 402 (d)(1) reads, in pertinent part: "Every *child* . . . of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, . . . shall be entitled to a child's insurance benefit . . . ." (Emphasis added.) The child is entitled to the benefit—not a parent. While it might be appropriate to reduce child support payments by the amount of any support benefit paid the child based on the retirement of the parent, it is beyond the authority of the court to take any child's money and use these funds to pay debts the father already owes.

This Court's precedent allows the portion of the current support obligation owed by the non-custodial parent to be derived from the child's benefit. This is logical, as the father is no longer working and the child's Social Security benefit is for the child's support. Therefore, what our precedent allows is a direct substitution of these sources of future child support. Here, the majority gives the trial court the authority to take the child's benefits in excess of what was awarded as child support under the guidelines to pay a debt already owed by the father. The trial court lacks the authority to take the child's assets to pay the father's debt. The child is only a party to a child support action in order to receive funds owed to that child—not to have a court invade the child's own assets for the father's benefit.

The child support benefit is paid by Social Security to support and care for the child and it is totally inappropriate to take that child's money to pay the father's past debts. A trial court should not have the discretion to do so. Therefore, I respectfully dissent as to this issue.

COUNSEL FOR APPELLANT/CROSS-APPELLEE, HARRY L. SEEGER:

William David Tingley
William D. Tingley, PLLC

COUNSEL FOR APPELLEE/CROSS-APPELLANT, SHARON LANHAM:

James Gregory Troutman
Troutman Law Office, PLLC

Julie Ashley Johnson
Johnson Kang Cook Abbott & Flynn, PLLC