RENDERED: AUGUST 20, 2015
TO BE PUBLISHED

## Supreme Court of Kentucky

2014-SC-000329-DGE
2014-SC-000495-DGE

FINAL

DATE 9-10-15  EwACrou:H P.c

C. D. G.                                                  APPELLANT/CROSS-APPELLEE

ON REVIEW FROM COURT OF APPEALS
V.                    CASE NO. 2013-CA-001110-ME
JEFFERSON CIRCUIT FAMILY COURT NO. 07-J-500757

N. J. S.                                                  APPELLEE/CROSS-APPELLANT

**OPINION OF THE COURT BY JUSTICE NOBLE**

**REVERSING AND REINSTATING**

The main issue in this case is whether a parent may be given a dollar-for-dollar credit for Social Security retirement dependent benefits against a child-support obligation in light of KRS 403.211(15), which expressly allows such a credit for *disability* payments but says nothing about retirement benefits. The secondary issue, if such credits are proper, is whether the trial court can apply the credit retrospectively when a lump-sum payment for past benefits is paid for the child. The Court of Appeals concluded that such credits are improper. This Court concludes otherwise and reverses and reinstates the order of the circuit court.

# I. Background

This case has a rather complicated back-story. Much of it is not germane to the issues in the case, however, and we recount only those facts necessary to resolve the issues.

The child in question was born in 2002 when NJS ("the mother"),[1] was married to JS ("John"). (The mother had four other children, all presumably fathered by her husband, and later had yet a sixth child; the support of those other children is not at issue in this case.) As would later be proved, however, the child was actually fathered by CDG ("Chris"), with whom the mother had been having an affair and for whom she worked. Nevertheless, John was listed as the child's father on the birth certificate, and he believed himself to be the child's father.

In 2006, the mother filed for divorce from John. The question of paternity of the child was raised for the first time in the divorce action. John resisted attempts to have paternity established as belonging to anyone other than himself.

Nonetheless, the mother initiated a paternity action against Chris in March 2007. Less than a month later, the mother and John entered into a marital settlement resolving child support and custody issues with respect to all the children. Under that agreement, John was to have the child no less than

---

[1] Initials are used in the caption of this opinion to identify the people in this action because that is how they are identified in the filings before this Court (they were named in the documents in the circuit court). We do not ordinarily protect the identity of parties to divorce and paternity actions, usually limiting that practice to cases where children are parties or the victims. In this case, however, we will follow the parties' leads, but will substitute pseudonyms instead of initials for readability.

2

half the time; John is alleged by Chris to be the child's primary caregiver at present.

The settlement agreement also "permit[ed]" (according to Chris's brief) John to apply for Social Security disability benefits, which he has been receiving since 2008. Those benefits included a sum for all six children, including approximately $175 per month for the child in this case, paid to him as the representative payee.

After the marital settlement, Chris unsuccessfully sought to have the paternity action dismissed. In October 2007, he was found to be the child's father. In January 2008, the mother moved to have Chris ordered to pay child support. They eventually entered an agreed order under which he would pay $775 per month in support and owe no arrearage, and the mother would be responsible for the child's health insurance. Apparently, the parties' incomes[2] put them beyond the top of the support guidelines. The mother claimed that she agreed to a lower support amount in anticipation that she would receive Social Security dependent benefits for the child when Chris retired in a few years, but no other evidence supports this claim. Chris paid his support obligation regularly until March 2013.

In November 2011, Chris turned 67 and applied for Social Security retirement benefits. At that time, he advised the Social Security Administration that the child in this case was his child. He was advised that the child would be eligible for dependent benefits, but that the custodial parent would have to complete an application for the child. Chris claims that he advised the mother

_____

[2] Both are practicing attorneys with substantial incomes.

3

of this on that day and that he had agreed to meet her at the Social Security office to complete the process. Chris also claims the mother fought going through with the Social Security application process until compelled by the trial court. The mother claims that she did not know the child was eligible for these benefits until 2012, when she received a notice from the Social Security Administration stating that Chris was receiving benefits.

In an effort to move the matter forward, Chris filed a motion in March 2012 to have his support obligation offset by the amount of the Social Security dependent benefits due to the child, which were later determined to total $1256 per month, and recoupment of any overpayment of support paid since he began receiving Social Security benefits in May 2011 and the child became eligible for dependent benefits. Much wrangling between the parties ensued.

Chris alleges that much of the delay in getting benefits for the child was due to the fact that the child was already receiving benefits under John's disability benefits. (Chris alleges that the mother was intentionally committing fraud with respect to the two sets of Social Security benefits.) The mother agrees to some extent about the source of the delay, claiming that it was the result of her ex-husband, John, having obtained benefits for the child without her knowledge and his having to appear at the Social Security office to straighten things out, but also claiming that none of the delay is attributable to her. (She, of course, denies any fraud.)

Eventually, in March 2013, the child was awarded Chris's benefits, including a $23,780 lump-sum award of back benefits for the period of May 2011 to March 2013. The lump sum was sent to the mother. Shortly thereafter,

4

Chris asked that the amount and any future support payments be paid into escrow until his motion for an offset could be decided. According to the representations of her lawyer to the trial court, the mother had not received the award at that point, as it had been mistakenly sent to John. The court took the matter under submission. A few days later, the mother alleged that she had since received and immediately spent the full lump sum, and thus it was not available to be paid into escrow, despite having notice that a motion was pending before the court to escrow the funds.

Eventually, the trial court ordered that Chris get "a dollar for dollar credit against his monthly child support obligation for any monies the child receives as a result of his Social Security retirement benefits," meaning he would owe nothing, as the benefit to the child exceeded his support obligation. To reach this result, the court concluded that this was the "equitable outcome" and saw no reason that the SSA retirement benefits should be treated any differently than disability benefits are treated under KRS 403.211(15).[3]

The court also ordered the mother to repay the "overpayment" for the 22 months between the beginning of the child's eligibility for benefits and the court's order (a total of $17,050), noting that she "has the funds available for

---

[3] That provision states:

> A payment of money received by a child as a result of a parental disability shall be credited against the child support obligation of the parent. A payment shall not be counted as income to either parent when calculating a child support obligation. An amount received in excess of the child support obligation shall be credited against a child support arrearage owed by the parent that accrued subsequent to the date of the parental disability, but shall not be applied to an arrearage that accrued prior to the date of disability. The date of disability shall be as determined by the paying agency.

KRS 403.211(15).

5

repayment as a result of the lump sum payment from Social Security for retroactive benefits," and that "it would be unfair and unjust to [Chris] for this Court to deny him the ability to recoup his overpayment from those funds."

The Court of Appeals reversed, holding that Chris was not entitled to a credit under KRS 403.211(15), reviewing the matter *de novo*. Because Chris was not entitled to a credit, he was also not entitled to recoup any previous support payments.

We granted discretionary review to answer the question whether a trial court may order such a credit and, if so, whether recoupment is appropriate.

## II. Analysis

This case essentially presents two broad questions. First, may a trial court give a credit against a child-support obligation for Social Security retirement benefits paid to a dependent child? Second, if a court may award such a credit, may it also apply the credit retroactively and order recoupment of already paid support upon a lump-sum award of back dependent benefits?

### A. A trial court may award a credit for Social Security retirement benefits against a child-support obligation.

#### 1. Standard of Review

Before turning to the merits of the parties' contentions, we must first address the appropriate standard of review.

Chris claims that the Court of Appeals should have applied an abuse-of-discretion standard to the trial court's decision to give the dollar-for-dollar credit. He notes that the trial court did not rely on KRS 403.211 in awarding the credit but instead decided that equity demanded treating retirement

6

benefits the same way that disability benefits are treated under that statute. He also notes that support decisions are otherwise reviewed for abuse of discretion.

The mother claims the proper standard is *de novo*, and thus the Court of Appeals did not err. She argues that by comparing retirement and disability benefits, the trial court was necessarily applying KRS 403.211(15), which applies only to disability benefits and says nothing about retirement benefits, and therefore does not apply at all.

As the courts of this Commonwealth have repeatedly stated, trial courts have broad discretion in determining child-support matters. *See Artrip v. Noe*, 311 S.W.3d 229, 232 (Ky. 2010) ("The trial court is vested with broad discretion in the establishment, enforcement, and modification of child support."); *Van Meter v. Smith*, 14 S.W.3d 569, 574 (Ky. App. 2000) ("[T]his state's domestic relations law is founded upon general statutory guidelines and presumptions within which the trial court has considerable discretion. The trial court has discretion in many instances, moreover, to deviate from the statutory parameters, but only if it makes findings clearly justifying the deviation."). "[T]hat discretion extends, pursuant to KRS 403.211(2)–(4), to deviations from guidelines-determined child support amounts." *Commonwealth, Cabinet for Health and Family Services v. Ivy*, 353 S.W.3d 324, 329 (Ky. 2011). Nevertheless, the mother argues, the trial court's discretion does not extend to granting Chris a credit for the dependent benefits paid for the child.

Thus, the appropriate standard of review is two-fold as there are actually two separate questions respecting the credit. As to the more fundamental

7

question of whether a trial court's discretion extends, at all, to granting a credit for retirement benefits paid to a dependent child, the standard is *de novo* because that is a purely legal question. But if the trial court has such discretion, the appropriate standard in reviewing the trial court's decision granting the credit is abuse of discretion.

## 2. May a trial court grant a credit for Social Security retirement benefits?

The mother, as noted above, basically argues that the trial court has no power at all to grant a credit. Her argument is premised largely on the fact that KRS 403.211(15) only mentions a credit for disability benefits, not retirement benefits, and thus the trial court necessarily erred in acting under this statute. She argues that this Court cannot add words to KRS 403.211(15) giving trial courts the discretion to award credits, and that this Court is bound by the pronouncements of the General Assembly.

This argument has a mistaken premise. It assumes the trial court acted under KRS 403.211(15). The trial court did not act under this statute, and instead acted under its general power to determine child-support obligations. Indeed, the court expressly stated that treating the retirement benefits in this way was the "equitable outcome," and that it was simply treating retirement benefits "in the same manner" as disability benefits. Thus, it is evident that the trial court acted under its broader statutory mandate, not the specific guidance of KRS 403.211(15), and was exercising the discretion inherent in that general statutory grant of authority to determine child-support questions.

8

Though she does not expressly make the argument, the mother's claim is better understood as one based on the canon of statutory interpretation known as *expressio unius* (short for *expressio unius est exclusio alterius* or "the expression of one thing is the exclusion of another"). Though not named as such, this is the rule applied by the Supreme Judicial Court of Maine in *Wong v. Hawk*, 55 A.3d 425 (Me. 2012), on which the Court of Appeals relied heavily in this case. *Expressio unius* is the "familiar and general rule ... that the mention of one thing implies the exclusion of another." *Fox v. Grayson*, 317 S.W.3d 1, 8 (Ky. 2010) (quoting *Jefferson County v. Gray*, 198 Ky. 600, 249 S.W. 771, 772 (1923)). If this rule controls this case, then the legislature's choice to mention disability benefits, but not retirement benefits, would imply an intention to exclude retirement benefits and set a limit on a trial court's discretion in this area.

But this "doctrine properly applies only when the *unius* (or technically, *unum*, the thing specified) can reasonably be thought to be an expression of *all* that shares in the grant or prohibition involved." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012). The credit provision in KRS 403.211(15) is not an expression of all that a trial court may or must do in deciding the amount of child support owed or the source of payments. The authority and responsibilities of a court in deciding child-support questions are described across several provisions, KRS 403.211, .212. and .213, each of which contains several subparts. And, as already noted, that authority is broad, limited only by the requirements that the discretion be exercised reasonably and in conformity with any applicable statutory limits.

9

This understanding is buttressed by the fact that the power of trial courts to give credits for disability benefits did not originate in a statute expressly giving such power, whereas the power appears to have been wholly statutory in Maine. Instead, the discretion to give such a credit first appeared in case law, which in turn was based on the General Assembly's statutory grant of general discretion in deciding support matters. A statute expressly allowing a court to give a credit for disability benefits was not enacted until 2000, *see* 2000 Ky. Acts ch. 430, § 18 (adopting what is now KRS 403.211(15)), yet some version of the credit notion has been present in the law of this state since at least 1980. *See Hamilton v. Hamilton*, 598 S.W.2d 767, 769 (Ky. App. 1980) (allowing consideration of Social Security death benefits in decision to modify support). This Court expressly acknowledged the premise in 1985, stating that "Kentucky follows the prevailing view of most jurisdictions in the United States in that government benefits in the form of social security for child support may be credited against the parent's liability under the decree or agreement of settlement." *Board v. Board*, 690 S.W.2d 380, 381 (Ky. 1985).

Credits for disability benefits were specifically addressed in *Miller v. Miller*, 929 S.W.2d 202, 205 (Ky. App. 1996), which predated the statutory authorization by four years. In *Miller*, the court reasoned that because disability benefits are a substitute for income, and that payment of such benefits to the child directly (or, in reality, the mother or other custodian as the representative payee) accomplished the purpose of a child-support order, namely, making money available for the benefit of the child, they could be credited against a support obligation.

10

When the General Assembly enacted KRS 413.211(15), it simply codified what had already been the law of Kentucky. If anything, the legislature's decision to codify the disability credit reflects a policy decision that the credit is *mandatory*, because the statute uses the word "shall," and therefore is no longer subject to a trial court's discretion. This was a narrow limit on a trial court's power when addressing retirement benefits (removing the option of not granting a credit), not a bar on giving a credit in other situations.

It is understandable that the General Assembly did not specifically address retirement dependent benefits. The reality, at least in the past, is that a person entitled to receive Social Security retirement benefits is far less likely to have dependent children than a person receiving disability benefits. Obviously, it is not impossible, as illustrated by this case. And it is becoming far more common for children to be born to older parents, who may divorce or may never be married at all and thus face support issues. But the General Assembly's failure to address this does not control our interpretation of the child-support processes.

The mother nevertheless argues that there is a distinction between disability benefits and retirement benefits, and that even under the rationale of *Miller* and similar cases, a credit for the latter is improper. She notes that the disability-benefit and death-benefit cases note that those benefits "are not gratuitous but are paid as a substitute for lost earning power and are similar in nature to insurance benefits." *Board*, 690 S.W.2d at 382. She notes that Chris's retirement benefits are not a substitute for any lost income; she also

11

notes that he continues to earn substantial income and is fully capable of supporting the child.

Still, we see no significant distinction between disability and retirement benefits, at least in this context. Certainly, disability benefits are a substitute for *lost* income, but the important thing is that they are a type of income, albeit indirect income paid to the child. Retirement benefits are also a type of income. And they are not gratuitous; they are instead a type of delayed income based on a history of paying into the Social Security system over a life's work. (In a sense, they are for "lost" income, in that the money that was paid (as required by law) into the Social Security system was not available for use by the person at the time or as an investment.)

Retirement benefits are, in essence, income from a government-required investment, the benefits of which are realized only after a certain age. And dependent benefits are like the income of an investment trust or an annuity whose benefits are paid to a third party (here, the child). *Van Meter,* 14 S.W.3d at 573. The benefits, regardless of whether they stem from disability or retirement, are an "indirect transfer of income from [Chris] to [the child] for which [Chris] would be entitled to credit." *Id.* Thus, the principle is the same for both retirement and disability benefits. Both are sufficiently analogous to other third-party payments to the child, such as "an insurance policy or a private trust" to allow them to be treated as coming indirectly from the parent. *Id.* "There is no difference in the amount of payment for child support. The only change is the source of those payments." *Board,* 690 S.W.2d at 382.

12

In a sense, the benefits paid for the child are like independent financial resources. Though they are paid to the mother, because the child is a minor, they do not belong to the mother, nor are they for her benefit. At the same time, Chris never has access to the funds, as they are paid directly to the mother, bypassing him entirely. *Cf. Barker v. Hill,* 949 S.W.2d 896, 897 (Ky. App.1997) (treating SSI benefits due to the child, which are not for parent's lost income, as an independent financial resource). The independent financial resources of a child are a proper consideration in deciding child-support questions, KRS 403.211(3)(d), as is " [a]ny similar factor of an extraordinary nature specifically identified by the court which would make application of the guidelines inappropriate," KRS 403.211(3)(g), which would further support the trial court's authority to take the benefits into account. Of course, the court did not proceed under these provisions to modify the amount, and instead employed a credit. Nonetheless, this further evinces the trial court's general discretionary authority over support matters to reach a fair and just result.

Thus, this Court concludes that trial courts have the discretion to award a credit for Social Security retirement benefits paid to the dependent child. This authority does not stem from KRS 403.211(15) but from a trial court's general authority and discretion to determine child-support questions. The simple fact is that nothing in our statutory scheme prohibits such a credit.

### 3. The trial court did not abuse its discretion in awarding the credit to Chris.

Having determined that the trial court had the discretion to award the credit, this Court must now determine whether that discretion was abused in

13

this case. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

This Court cannot say that the trial court abused its discretion under this standard. Although "[t]his discretion is far from unlimited[,] ... generally, as long as the trial court gives due consideration to the parties' financial circumstances and the child's needs, and either conforms to the statutory prescriptions or adequately justifies deviating therefrom, this Court will not disturb its rulings." *Van Meter*, 14 S.W.3d at 572. We are convinced that the trial court gave due consideration to all the relevant circumstances. The court justified its decision by noting that granting the credit was the equitable outcome.

It is important that the trial court employed a credit, rather than reducing Chris's child support obligation. If the benefit payments ceased for some reason, Chris would still be obligated to pay, as there would no longer be anything for which to give him a credit. *Cf. Board*, 690 S.W.2d at 382 ("Should the social security benefits be changed, the mother or custodian can look to the estate for satisfaction of the basic obligation which remains intact."). But just as in *Miller*, this means that the purpose of the support order is being satisfied because substantial money, more even than required by the agreed support order, is available for the benefit of the child.

The mother claims that she settled for a lower child-support payment in anticipation of the child's receiving dependent benefits as a supplement. Although this may be part of an argument for seeking modification of the

14

support agreement, assuming she could show a continuing change of circumstances, it does not make the trial court's decision here an abuse of discretion.

## B. Recoupment of the 22 months' support payments was proper.

In her cross-appeal, the mother argues that even if a credit was appropriate, the trial court erred in ordering her to pay back the $17,050 in support that Chris paid during the 22 months the child was eligible for dependent benefits before the benefits (and lump-sum back payment) were awarded. Specifically, she claims that this recoupment award violates the Social Security Act's anti-attachment provision and the rule that support can only be modified prospectively.

Social Security benefits are protected by what is commonly known as an anti-attachment provision. It states:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C.A. § 407.

This Court has held, in accordance with the Supreme Court's pronouncements on the subject, that this provision does not shield a person's Social Security payments, once made,[4] because it is aimed largely at preventing

---

[4] There is even an exception to this anti-attachment provision for child-support obligations that would allow a garnishment action against the Social Security Administration. *See* 42 U.S.C. § 659(a) ("Notwithstanding any other provision of law (including section 407 of this title ...), ... moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States ...

15

the Social Security Administration from becoming a collections agency and to prevent the depletion of a person's whole means of subsistence. *See Commonwealth, Cabinet for Health and Family Services v. Ivy*, 353 S.W.3d 324, 338 (Ky. 2011) (applying *Rose v. Rose*, 481 U.S. 619 (1987)). The trial court's recoupment order does not attempt to bind the Social Security Administration in any way, aimed as it is only at recouping monies already paid out. Nor would the recoupment order deprive the child of her entire means of support. Chris's support payments are only part of the overall support due to the child; the mother also has a statutory duty to support her child, and she has a substantial income. Moreover, Chris is not seeking to lower the amount of support he owed. That money was properly paid. Nor is he trying to recoup the amount of the Social Security benefits that exceed his support obligation. Instead, he is only seeking to recoup the amount that was effectively paid twice once the Social Security lump-sum payment was made.

That said, the mother cites a Supreme Court case with language strongly suggesting that anti-attachment provisions like this one make the associated

---

(including any agency, subdivision, or instrumentality thereof) to any individual ... shall be subject, in like manner and to the same extent as if the United States ... were a private person, ... to any other legal process brought ... by an individual obligee, to enforce the legal obligation of the individual to provide child support or alimony."). Though this does not extend to Supplemental Security Income, *Sykes v. Bank of America*, 723 F.3d 399, 405 (2d Cir. 2013); *Commonwealth, Cabinet for Health and Family Services v. Ivy*, 353 S.W.3d 324, 339 (Ky. 2011), it expressly includes Social Security retirement and disability benefits, *see* 42 U.S.C.A. § 659(h)(1)(A)(ii) (defining covered moneys as "periodic benefits ... or other payments ... under the insurance system established by subchapter II of this chapter").

This exception would allow Chris's Social Security benefits to be garnished if he was not paying his support obligation. But he, in fact, seeks the opposite: he would dip into the child's dependent benefits to recoup his already paid support. If the § 407 anti-attachment provision applied to this case, the exception in § 659 would not.

16

benefits payments sacrosanct and beyond invasion, even once paid. *See*

*Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 415–16 (1973) ("On its face,

the Social Security Act in § 407 bars the State of New Jersey from reaching the

federal disability payments paid to Wilkes. The language is all-inclusive .... But

§ 407 does not refer to any 'claim of creditors'; it imposes a broad bar against

the use of any legal process to reach all social security benefits. That is broad

enough to include all claimants, including a State.").

But later iterations of the Supreme Court have declined to read such

language so broadly, and concluded instead that they have the limited

purposes discussed above. *See Rose*, 481 U.S. at 630. Though the Supreme

Court has not expressly receded from *Philpott*, the holding in *Rose* is certainly

inconsistent with it. And *Philpott*, had it been addressed in *Rose*, would have

been readily distinguishable because the beneficiary in the older case had no

other income except for the state-paid benefits that the state was seeking to

recoup upon the payment of the lump-sum amount for back Social Security

benefits. In that instance, the state's attempt to recoup would have consumed

70 to 80% of the man's income for the relevant time period. That is not the case

here, where the recoupment would return only a fraction of the money

available to the child, and was aimed only at the amount that amounted to a

double-payment of support. Even after recoupment, an amount equal to all of

the Social Security payments made should be available (though allegedly

already spent) for the child's benefit.

That leaves the mother's argument that the trial court's order violated

the rule against retrospective changes to child support. "In this jurisdiction, it

is settled that support payments, once accrued, are fixed and may not be modified by the trial court, and any change in the amount of support only operates prospectively." *Clay v. Clay*, 707 S.W.2d 352, 353 (Ky. App. 1986). Thus, "restitution or recoupment of excess child support is inappropriate unless there exists an accumulation of benefits not consumed for support." *Id.* at 354. To support such a decision, the trial court must make a finding that there has been an accumulation of benefits, which is unlikely to occur except in "an exceptional case." *Id.*

Arguably, this is such an exceptional case because there was an accumulation of benefits available for recoupment. The trial court specifically found the mother "has the funds available for repayment as a result of the lump sum payment from Social Security for retroactive benefits." The mother, of course, claims the trial court's finding was erroneous because she had already spent the money. But there was proof to support the court's finding.

And more importantly, the no-recoupment rule does not apply to the circumstances of this case. The rule is aimed at instances where the "support order is reversed or vacated on appeal," at which point "there is a strong inference that recoupment or restitution should be disallowed." *Id.* at 353. For example, if support is set at a certain amount on day one, and the obligated parent successfully challenges that amount as erroneously high on appeal, resulting in a reduction of the support obligation, the no-recoupment rule would ordinarily prevent the parent from being reimbursed the amount that was overpaid between the trial court's order and the appellate decision.

18

But Chris did not obtain a modification of his support, either from the trial court or on appeal. Instead, he paid his support obligation over a period of 22 months in which the child was later found entitled to receive Social Security dependent benefits. Once those benefits were awarded, Chris properly obtained a credit for those benefits against his support obligation going forward. He also sought a credit against the past, already-satisfied obligation, which could only be accomplished through a recoupment award.

The circumstances in this case are simply different from those where a parent later obtains a modification of support on appeal. There was indeed a lump-sum award here against which recoupment could be legitimately taken. The trial court, by allowing Chris to recoup prior payments after the award of a lump-sum Social Security dependent benefit, "did not retrospectively modify the child support provisions of the order." *Van Meter v. Smith*, 14 S.W.3d 569, 572 (Ky. App. 2000). Instead, it gave him the credit he would have been entitled to had the child been receiving its benefits from the first day of eligibility. *See Board v. Board*, 690 S.W.2d 380, 381 (Ky. 1985) ("There is a distinction between crediting an obligation with payment made from another source and increasing, decreasing or terminating, or otherwise modifying a specific dollar amount."). The child still received all the money that Chris was obligated to pay—and then some, since the lump-sum award exceeded Chris's support obligation during the 22-month period. The trial court simply recognized the reality of what had happened: the child received her support from a different source, after the fact. Thus, the no-recoupment rule is not applicable to this case.

The only question is whether the trial court abused its discretion in ordering the mother to reimburse Chris for the support payments made during the 22 months when the child was eligible for Social Security benefits. This Court concludes that it did not.

The trial court considered all the circumstances, and found that the mother had "the funds available for repayment as a result of the lump sum payment from Social Security for retroactive benefits." The mother points to evidence that she had already spent the money by the time Chris sought the recoupment, suggesting the funds were unavailable. But even if so, the expenditures would have been made knowing that a motion for recoupment was pending, and in an obvious effort to dispose of the fund available for recoupment.

And Chris points out that there is evidence that some of the claimed payments were made before the award, that it is less than clear that the payments were made from the awarded funds, and that the mother had a substantial income (presumably one sufficient enough to show that she could have paid whatever she did out of her own pocket). It is apparent that the trial court simply did not believe the mother's accounting of the funds. The court's finding in that respect is not clearly erroneous.

Furthermore, the court concluded that it would be "unfair and unjust to [Chris] … to deny him the ability to recoup his overpayment from those funds." This conclusion that the balance of the equities favored reimbursement for Chris was not an abuse of discretion in light of all the circumstances.

20

## III. Conclusion

As explained above, the trial court had the discretion to award Chris a credit against his child-support obligation for Social Security retirement dependent benefits paid to the child, and it was not an abuse of that discretion under the circumstances of this case to award the credit. Moreover, the trial court did not violate the no-recoupment rule since a fund was available that had not been paid out during the child support period in question, and because there was no modification of Chris's support obligation. Consequently, it was not error to order the mother to reimburse him for support payments made during the 22-month period in which the child was eligible for Social Security benefits that were later paid as a lump sum. For those reasons, the decision of the Court of Appeals is reversed, and the order of the trial court is reinstated.

All sitting. All concur.

COUNSEL FOR APPELLANT/CROSS-APPELLEE:

Callie Elizabeth Walton
Gwin, Steinmetz & Baird
401 W. Main Street
Suite 1000
Louisville, Kentucky 40202

COUNSEL FOR APPELLEE/CROSS-APPELLANT:

Nancy J. Shook
809 Bedfordshire Road
Louisville, Kentucky 40222