RENDERED: MAY 27, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2021-CA-0398-MR

ROBERT ALAN BATES                                          APPELLANT

                  APPEAL FROM JEFFERSON FAMILY COURT
v.              HONORABLE ANGELA JOHNSON, JUDGE
                       ACTION NO. 13-CI-501538

KINSEY HEAD BATES (NOW
COWAN)                                         APPELLEE

AND

NO. 2021-CA-0596-MR

ROBERT ALAN BATES                                          APPELLANT

                  APPEAL FROM JEFFERSON FAMILY COURT
v.              HONORABLE ANGELA JOHNSON, JUDGE
                       ACTION NO. 13-CI-501538

KINSEY HEAD BATES (NOW
COWAN) AND ARMAND JUDAH,
ESQ.                                          APPELLEES

** ** ** ** **

BEFORE:  LAMBERT, MAZE, AND L. THOMPSON, JUDGES.

LAMBERT, JUDGE:  Robert Alan Bates has appealed from two sets of rulings of the Jefferson Family Court.  The first modified his child support obligation from $675.00 to $1,014.30, and the second directed him to pay $5,000.00 as an advancement on attorney fees for the appeal to the attorney representing his former wife.  We vacate the order relating to child support and remand for an appropriate calculation of child support, and we reverse the award of attorney fees.

Robert and Kinsey Head Bates (now Cowan) were married on August 17, 2002, in Paradise Island, Bahamas, and together they have three children (two sons, born in 2001 and 2009, and one daughter, born in 2006).  The parties separated in January 2013, and Robert filed a petition to dissolve the marriage on May 20, 2013.  In addition to the assignment of non-marital property and equitable division of marital property, debts, and obligations, Robert sought an award of joint custody of the three minor children and a determination of child support.  Kinsey filed a counter-petition seeking sole custody of the children.  At the time the petitions were filed, Kinsey was the owner of a boutique, The Prickly Pear, and worked as a leasing agent earning $150.00 every two weeks.  In a later disclosure,

-2-

Kinsey listed her income as a leasing agent as $150.00 to $200.00 every two weeks and that she had started Initial Me Pink, a home business in embroidery and graphic design. Robert was employed as an MRI Technologist earning a net pay of $1,950.43 every two weeks (gross pay of $2,540.03), including overtime. He had a second job working as a PRN earning a net pay of $290.00 every two weeks (gross pay $375.00), including overtime. A mediation attempt was unsuccessful.

In October 2013, the parties reached an agreement as to custody. The parties agreed to share joint legal custody of the minor children with shared parenting time and an equal division of holidays. The court entered a decree dissolving the marriage on December 3, 2013, in which it also awarded the parties joint custody of the minor children pursuant to their agreement. On January 29, 2014, the family court entered an order approving the parties' agreement as to the remaining issues, including the division of personal property, the marital residence, and an equalization payment for Kinsey. Both parties waived claims for maintenance and were to pay their respective attorney fees. Kinsey surrendered any claim to Robert's 401K account, and Robert waived any claim to Kinsey's business, Initial Me Pink. The parties' debts had been discharged in a Chapter 7 bankruptcy proceeding, and each would be responsible for the debt he or she incurred that was not listed.

As to child support, the agreement provided in paragraph 4:

Rob shall pay child support of $675.00 per month commencing January 15, 2014. Child support for January shall be paid February 1, 2014, and regular monthly child support shall continue thereafter. Child support shall be paid via 2 equal monthly installments.

Child support was based upon Kinsey $30,000 and Rob $77,000 gross annual income. Rob pays $244.50 per month for the children's health insurance. Uninsured or extraordinary medical expenses shall be paid: Rob 71.9%, Kinsey 28.1%. The parties shall settle up on extraordinary medical expenses every 3 months if not sooner. Failure to present medical reimbursement claims and proof thereof to the other within 90 days of billing forfeits that party's claim for reimbursement. Payment to be made to the other within 30 days.

In paragraph 7, the parties addressed the children's education:

Children to remain enrolled at St. Aloysius for 2013/2014 school year with each party paying ½ of monthly tuition. Parties will renew enrollment for following school year on same basis if parties [are] financially able. Otherwise, children will be enrolled in public school. Parties to confer on all education decisions. Each party [is] solely responsible for their 50% share of monthly tuition payment – 50% each.

Finally, the parties addressed claiming the children for income tax purposes.

In July of 2014, the parties entered into an agreed order regarding parenting issues. Among other topics, they agreed that "[m]ajor decisions about the children's education will be made by both parties together. They will decide together which schools the children will attend."

Several years later, on October 9, 2020, Robert moved the family court to modify his child support obligation. There had been a substantial and continuing change of circumstances pursuant to Kentucky Revised Statutes (KRS) 403.213 when their oldest child reached the age of 18 and graduated from high school. At that time, the parties were exercising equal parenting time with the two remaining minor children. Robert included a child support worksheet imputing an annual gross income of $30,000.00 to Kinsey as he did not have her financial information. And he listed his gross income as $69,504.00, using financial data from 2019. His calculation resulted in his owing Kinsey $363.00 per month in child support. In an attached affidavit, Robert stated that he had earned somewhat more than usual in 2020 due to the COVID-19 pandemic.

Robert renewed his motion in November and attached Kinsey's 2019 tax return and her three most recent paycheck stubs along with a revised child support worksheet. In an affidavit, Robert indicated that he was paying for the children's insurance at a monthly cost of $178.00 and that he was continuing to make more money than usual due to the COVID-19 pandemic. Kinsey was earning $20.00 per hour working about 40 hours per week pursuant to her paycheck stubs but was claiming to only work 30 hours per week. Robert included a child support worksheet using the Craig Ross software.[1] Based on Kinsey's net

_____

[1] The parties used this software program throughout the modification proceedings.

monthly income of $2,876.00 (31.26%) and his net monthly income of $3,858.00 (68.74%), Robert calculated that he owed Kinsey $339.00 per month in child support using the June 27, 2019, tables. He based this on the following calculation for shared custody: "Sum Of Days Formula (Using 1.5 Times Base [Base support was $1,404.00, and 1.5 times base was $2,106.00, with $178.00 in additional expenses]). (.500 Of $1392) Minus (.500 Of $714) Is The Net Transfer."

Kinsey objected to Robert's motion to reduce his child support obligation, arguing that his calculation was incorrect, although she agreed that child support should be recalculated based upon the emancipation of the oldest child. She said her hours and rate of pay had changed due to her new role in the same company due to the COVID-19 pandemic. The paycheck stubs she attached showed that she worked 38.17 hours at a rate of $20.00 per hour from September 19 through September 25, 2020; 41.33 hours at a rate of $20.00 per hour ($30.00 for her overtime hours) from September 26 to October 2, 2020; and 39 hours at a rate of $20.00 per hour from October 3 through October 9, 2020. In her child support worksheet, Kinsey listed her gross income as $23,124.00 and Robert's as $88,836.00. By her calculation, Robert would owe $611.00 per month based on her net monthly income of $2,422.00 (20.65%, or half of a $492.00 obligation) and his net month income of $4,806.00 (79.35%, or half of a $1,713.00 obligation).

Like Robert, Kinsey included a calculation based on their equally shared custody arrangement.

By order entered November 25, 2020, the family court temporarily modified Robert's child support obligation to $1,713.00 per month. Robert moved the court to reconsider or alter, amend, or vacate this temporary order, stating that a child support obligation of $1,713.00 was not supported by the evidence. He pointed out that Kinsey requested the amount be modified to $611.00 per month. Robert did not believe the family court took into account the 50/50 shared parenting schedule. In addition, Robert argued that the financial documents Kinsey attached showed that she was earning $41,600.00 per year and had not substantiated the lower income she listed on her child support worksheet. In the 2014 agreement, Kinsey's income had been imputed at $30,000.00 per year. He also disputed Kinsey's use of an annual salary for him of $88,836.00 as he had been working unusually long hours in the healthcare field due to the COVID-19 pandemic. He suggested that basing child support on their pre-COVID-19 incomes would be more just.

In her response, Kinsey agreed with Robert that the family court was incorrect in the amount of child support it ordered Robert to pay. Instead, she

stated that the proper amount of child support he owed was $1,212.00 per month.[2] She stated that while the child support chart showed $611.00 per month, that was only a suggestion based on the way the program computed child support with a shared parenting schedule and was up to the court's discretion. She did not have any objection to Robert's paying $1,212.00 per month in child support. Kinsey then discussed her income that she said had decreased due to the COVID-19 pandemic.

The court held a hearing on the motion to alter, amend, or vacate on December 7, 2020. And on December 14, 2020, the court entered a temporary order amending the November order to provide that Robert's child support obligation was $1,212.00 per month effective that date and scheduled a hearing on Robert's motion for early in 2021 where the parties could put evidence on the record.

Robert provided an updated child support worksheet in February 2021 in which he calculated his obligation would be $330.00 per month. He based this on Kinsey's net monthly income of $2,679.00 representing 32.24% of the combined adjusted gross income (her annual gross income was listed as $34,992.00) and his net monthly income of $4,655.00 representing 67.76% (his

---

[2] Based upon Kinsey's worksheet, Robert's obligation of $1713.00 minus Kinsey's obligation of $492.00 actually equals $1,221.00, not $1,212.00

annual gross income was $73,541.00). The base total support was $1,450.00, 1.5 times the base was $2,175.00, and there was $177.00 in additional expenses from Robert's payment of the children's health insurance premiums. Kinsey's presumed obligation was $758.00 (her base obligation of $701.00 plus her expense obligation of $57.00). Robert's presumed obligation was $1,417.00 (his base obligation of $1,474.00 plus his expenses obligation of $120.00 minus his expense credit of $177.00). With their shared custody arrangement, half of $1417.00 minus half of $758.00 resulted in a net transfer of $330.00 from Robert to Kinsey.

Kinsey also filed an updated child support worksheet prior to the hearing using $34,992.00 as her gross income and $84,540.00 as Robert's gross income. Robert's presumed obligation of $1,555.00 minus Kinsey's presumed obligation of $717.00 resulted in a difference of $838.00 per month. Using the shared parenting time calculation, the amount Robert owed was $419.00 per month.

The court held an evidentiary hearing via Zoom on February 5, 2021. Robert testified first. He discussed their original agreement as to child support and that it was based on Kinsey having an income of $30,000.00 and Robert having an income of $77,000.00. Robert was responsible for the children's health insurance, and he had been paying half of the private school tuition for the youngest child. He moved the court to modify child support in October 2020 when their oldest

child became emancipated. His W-2 forms showed that his total gross income from both of his jobs in 2020 was $73,541.18. This was slightly less than what he was earning when they entered into the 2014 agreement. The COVID-19 pandemic had slightly increased his income due to his having to cover third shift when other employees were out due to sickness or quarantine. He paid $177.45 per month for the children's health insurance. He and Kinsey had been exercising 50/50 shared parenting time every other week. He wanted the court to take this into consideration in setting child support. Robert's latest child support worksheet was based upon his 2020 income and what he was told was Kinsey's income. Based on this calculation, he requested that child support be set at $330.00 per month and that he receive a credit for overpaid support from the previous three months.

Kinsey testified next. She was working at Bottom Sign Company, where she had been employed for about one and one-half years. She earned $20.00 per hour, and she worked between 30 to 40 hours per week. She thought she would be making $30,000.00 per year. Her 2020 W-2 showed that she earned $26,633.64 from her employment that year. She had also earned some unemployment benefits. She denied having any other income.

When she and Robert divorced, Kinsey had a company called Initial Me Pink, which had closed in 2018. The PayPal account still had that name, but

she did not know how to change that. She did not receive any income from any other side businesses. Kinsey had provided copies of her checking account statements beginning on December 27, 2019. The statements showed several deposits from Etsy from her sale of the children's old clothes and toys. She had received between $600.00 and $800.00 from those sales. Her Etsy income was periodic, not regular. She said the website for Initial Me Pink was no longer active; she had sold the domain on GoDaddy.com when she closed out the business in 2018. Kinsey's bank records showed that she had received $13,880.00 in unemployment benefits in 2020. She said their son had been on unemployment so it could be mixed in with that as they shared the same account, but she was not sure. She said there were a few weeks where she received an additional $600.00 in benefits. She did not know how much she received versus how much her son received in unemployment benefits. She did not include her unemployment payments and her PayPal accounts as sources of income in discovery because she did not consider that income from another job. She had submitted the unemployment payments separately. She said she was not trying to hide that or her income from selling the children's old toys and clothing.

Kinsey went on to testify about the children's private school tuition and expenses. She paid $900.00 per month in tuition for their daughter; Robert did not pay any of this. Robert paid half of the tuition for their youngest child but had

told her he was not paying for any next year. Kinsey stated that she and Robert had a verbal agreement to share the cost of the children's private school tuition through 8th grade, and then it was up to her discretion moving forward. She also testified about other sports expenses she covered for the children's participation in lacrosse (the daughter) and football, soccer, and basketball (the son). She also paid for book and uniform fees.

Kinsey agreed it would be fair to impute income to her in the amount of $35,000.00. Based on her latest child support worksheet, Kinsey believed $838.00 in child support was appropriate.

On March 4, 2021, the family court entered an order ruling on Robert's motion to reconsider. As to Robert's annual income, the court opted to use the average of what he earned in 2019 ($69,509.00) and 2020 ($84,497.58), which was $77,003.29. The court believed this was a fair and equitable representation of his annual gross income. We note that Robert has not disputed this amount in his appeal. As to Kinsey's income and expenses, the court found:

> [Kinsey] is employed and earns $20 per hour and
> works an average of thirty-one (31) hours per week.
> [Kinsey] sells the children's old toys and equipment
> online and earns an estimated $800 in total but does not
> depend on that as income and it is periodic and
> inconsistent. [Kinsey] has not owned or operated her
> previous business since 2018, despite repeatedly being
> questioned by [Robert] as to the current operation status
> of that company. [Kinsey] does maintain a PayPal
> account with the same name as the former company, but

it does not receive or transfer funds to or from that business. [Kinsey] does not maintain any other financial accounts and a mutual fund she was awarded in the divorce was cashed out and put towards their oldest child's education. [Kinsey] pays $900 per month for their daughter's private school tuition, with the assistance of financial aid. [Kinsey] also pays for the other half of their son's private school tuition but believes after this year she will be solely responsible for those payments as [Robert] no longer wishes to contribute to private school. [Kinsey] pays for the children's extracurricular activities, which varies based upon the sport. [Kinsey] testified that she believes it would be fair and equitable to impute her annual gross income at $35,000 for the purposes of child support.

The court calculated child support based on Robert's gross income of $6,416.94 per month and Kinsey's gross income of $2,916.66, representing 69% and 31%, respectively, of the combined incomes. Robert's pro rata share of the base child support of $1,470.00 was $1,014.30, which the court stated was his base monthly child support, minus his health insurance payment.

The court considered Robert's request that it deviate from the child support guidelines based on their equal parenting time. The court opted not to do so for the following reasons:

Based upon [Robert's] testimony and the cross-examination of [Kinsey], it is apparent to this Court that [Robert] is seeking to limit his financial obligation to the children. He is lessening his obligation to pay for their private school, he has lessened his obligation to pay or reimburse [Kinsey] for the children's extracurricular activities, and conversely he [is] seeking to present [Kinsey's] income to appear inflated or that she is

-13-

concealing some liquid accounts or resources, all the while presenting his income to be less than what his tax forms are reporting and requesting this Court utilize his 2019 income as it is lesser than 2020, with no supporting legal basis. The hard numbers reflect that [Robert] earns nearly double what [Kinsey] earns and continues to be the higher income earner, as he was during the marriage. These factors are the exact antithesis of the factors that would allow this Court to deviate child support based upon parenting time. Despite these facts, [Robert] did not present any evidence that the children's lifestyle in his home are equal to the lifestyle in [Kinsey]'s home and otherwise equal resources for the children. [Robert] merely bases his request for a deviation on the sole fact that he and [Kinsey] have equal parenting time and that is not sufficient when taken in with the totality of the facts – namely that [Kinsey] is solely responsible for many of the children's expenses.

Therefore, the family court ordered Robert's monthly child support obligation to be $1,014.30 made retroactive to the date he filed his motion. Robert filed a notice of appeal from the November 25, 2020, December 14, 2020, and March 4, 2021, orders (Appeal No. 2021-CA-0398-MR).

After Robert filed his notice of appeal, Kinsey moved the family court pursuant to KRS 403.220 for an advancement of $5,000.00 to go toward her attorney fees to defend Robert's appeal. She stated that she would incur significant fees, which would create a severe financial hardship for her. Robert objected to the motion, noting that the court had not held a hearing on the parties' respective financial resources, which had not been before the court since 2014. In addition, his hours at his second job had been cut from 48 hours per month to 24 hours per

month, equating to a loss of $770.00 monthly. He also discussed the children's expenses that he had paid without reimbursement from Kinsey and Kinsey's lack of candor regarding unemployment benefits appearing in her bank statements as well as the continued operation of her business, Initial Me Pink. By order entered April 23, 2021, the court ordered Robert to pay an advancement of Kinsey's attorney fees in the amount of $5,000.00 and to remit that amount to her attorney, Armand I. Judah, within fifteen days.

Robert moved the court to alter, amend, or vacate the April 23, 2021, order, stating that he did not have the resources to pay the amount all at once and that his objection had demonstrated that Kinsey had misrepresented her own financial resources. He also requested specific findings in the event his motion to vacate was denied. Following a court appearance on May 10, 2021, the court denied Robert's motion. Robert filed his second notice of appeal from the April 23 and May 13, 2021, orders, naming both Kinsey and her counsel as appellees.[3]

On appeal, Robert argues that the family court abused its discretion and committed error in determining the amount of child support he owed and abused its discretion in ordering him to advance attorney fees to Kinsey's attorney.

Kentucky Rules of Civil Procedure (CR) 52.01 provides the general framework for the family court as well as review in the Court of Appeals:

---

[3] The two appeals were consolidated by order entered June 23, 2021.

-15-

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment[.] . . . Findings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

*See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (footnote omitted) (An appellate court may set aside a lower court's findings made pursuant to CR 52.01 "only if those findings are clearly erroneous."). The *Asente* Court went on to address substantial evidence:

> "[S]ubstantial evidence" is "[e]vidence that a reasonable mind would accept as adequate to support a conclusion" and evidence that, when "taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses" because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. Thus, "[m]ere doubt as to the correctness of [a] finding [will] not justify [its] reversal," and appellate courts should not disturb trial court findings that are supported by substantial evidence.

*Id.* (footnotes omitted).

Regarding our review of child support obligations, we stated in *C.D.G. v. N.J.S.*, 469 S.W.3d 413, 418 (Ky. 2015):

> As the courts of this Commonwealth have repeatedly stated, trial courts have broad discretion in

-16-

determining child-support matters. *See Artrip v. Noe*, 311 S.W.3d 229, 232 (Ky. 2010) ("The trial court is vested with broad discretion in the establishment, enforcement, and modification of child support."); *Van Meter v. Smith*, 14 S.W.3d 569, 574 (Ky. App. 2000) ("[T]his state's domestic relations law is founded upon general statutory guidelines and presumptions within which the trial court has considerable discretion. The trial court has discretion in many instances, moreover, to deviate from the statutory parameters, but only if it makes findings clearly justifying the deviation."). "[T]hat discretion extends, pursuant to KRS 403.211(2)-(4), to deviations from guidelines-determined child support amounts." *Commonwealth, Cabinet for Health and Family Services v. Ivy*, 353 S.W.3d 324, 329 (Ky. 2011).

"The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *C.D.G. v. N.J.S.*, 469 S.W.3d. at 421) (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

Robert's overriding argument in the first appeal is that the family court abused its discretion in setting the amount of child support and, more specifically, when it did not deviate from the child support guidelines to take into account his shared custody with Kinsey. The family court increased his obligation from $675.00 per month for three children to $1,014.30 per month for two children, an increase of $339.30 per month. We agree with Robert that this constituted an abuse of discretion.

KRS 403.213 sets forth the criteria necessary to modify an order for

child support:

> (1) The Kentucky child support guidelines may be used by the parent, custodian, or agency substantially contributing to the support of the child as the basis for periodic updates of child support obligations and for modification of child support orders for health care.  The provisions of any decree respecting child support may be modified only as to installments accruing subsequent to the filing of the motion for modification and only upon a showing of a material change in circumstances that is substantial and continuing.
>
> (2) Application of the Kentucky child support guidelines to the circumstances of the parties at the time of the filing of a motion or petition for modification of the child support order which results in equal to or greater than a fifteen percent (15%) change in the amount of support due per month shall be rebuttably presumed to be a material change in circumstances.  Application which results in less than a fifteen percent (15%) change in the amount of support due per month shall be rebuttably presumed not to be a material change in circumstances. For the one (1) year period immediately following enactment of this statute, the presumption of material change shall be a twenty-five percent (25%) change in the amount of child support due rather than the fifteen percent (15%) stated above.
>
> (3) Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child shall be terminated by emancipation of the child unless the child is a high school student when he reaches the age of eighteen (18). . . .

Accordingly, in order for Robert to be entitled to a modification of his child

support of $675.00 per month, he must establish that there had been "a material

change in circumstances that is substantial and continuing" that resulted in a 15%

or greater change in the amount of support he owed to Kinsey. KRS 403.213(1).

Here, their oldest child had reached the age of 18 and had graduated from high

school.

KRS 403.211 addresses child support and provides courts with an

option to deviate from the guidelines set forth in KRS 403.212 under certain

circumstances:

> (2) At the time of initial establishment of a child support order, whether temporary or permanent, or in any proceeding to modify a support order, the child support guidelines in KRS 403.212 shall serve as a rebuttable presumption for the establishment or modification of the amount of child support. Courts may deviate from the guidelines where their application would be unjust or inappropriate. Any deviation shall be accompanied by a written finding or specific finding on the record by the court, specifying the reason for the deviation.

> (3) A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption and allow for an appropriate adjustment of the guideline award if based upon one (1) or more of the following criteria:

>> (a) A child's extraordinary medical or dental needs;

>> (b) A child's extraordinary educational, job training, or special needs;

>> (c) Either parent's own extraordinary needs, such as medical expenses;

(d) The independent financial resources, if any, of the child or children;

(e) Combined monthly adjusted parental gross income in excess of the Kentucky child support guidelines;

(f) The parents of the child, having demonstrated knowledge of the amount of child support established by the Kentucky child support guidelines, have agreed to child support different from the guideline amount. However, no such agreement shall be the basis of any deviation if public assistance is being paid on behalf of a child under the provisions of Part D of Title IV of the Federal Social Security Act; and

(g) Any similar factor of an extraordinary nature specifically identified by the court which would make application of the guidelines inappropriate.

(Footnote omitted.)

In *Plattner v. Plattner*, 228 S.W.3d 577, 579-80 (Ky. App. 2007), this

Court discussed the flexibility of the child support guidelines:

While Kentucky's child support guidelines do not contemplate such a shared custody arrangement, they do reflect the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes. They also provide a measure of flexibility that is particularly relevant in this case. Under the provisions of KRS 403.211(2) and (3), a trial court may deviate from the child support guidelines when it finds that their application would be unjust or inappropriate. The period of time during which the children reside with each parent may be considered in determining child

-20-

support, and a relatively equal division of physical custody may constitute valid grounds for deviating from the guidelines. *Brown v. Brown*, [] 952 S.W.2d 707 (Ky. App. 1997); *Downey v. Rogers*, 847 S.W.2d 63 (Ky. App. 1993).

In *Downey v. Rogers*, 847 S.W.2d 63 (Ky. App. 1993), we declined to conclude that a trial court had abused its discretion by awarding child support where the parties shared **legal** custody and shared equal or almost equal **physical** custody of their children. However, our conclusion was based, in part, upon the fact that the children's father **had agreed** to pay a portion of his child support obligation to the children's mother. We also noted that the children's father earned twice as much annually as did their mother; thus, her share of the children's expenses was proportionately more cumbersome.

The evidence as described in Plattner's brief is notably different and distinguishable and does not support the conclusion that his child support obligation as reflected in the guidelines should be paid to Levoir. The parties were awarded joint custody of the children, and neither of them was designated as the primary residential custodian. Because physical custody of the children is evenly divided between the parents, they bear an almost identical responsibility for the day-to-day expenses associated with their care. And since there is no significant disparity between the parties' annual income, the expenses necessary to provide a home for the children (even when they are not in residence) are also incurred by each party in equal proportion.

The statutory guidelines offer sufficient flexibility to allow the trial court to fashion appropriate and just child support orders. Under the unique circumstances of this case, we conclude that the trial court erred by awarding child support to Levoir.

-21-

Robert argues that such circumstances exist in this case that justify a deviation from the child support guidelines.

First, we agree with Robert that the parties essentially agreed to deviate from the child support guidelines in their 2014 agreement that the court adopted. At that time, the parties had three minor children, and Robert's support obligation was set at $675.00 per month. This was based upon Robert's gross annual income of $77,000.00 and Kinsey's gross annual income of $30,000.00. In addition, Robert paid $244.50 per month in health insurance premiums for the children. And uninsured or extraordinary medical expenses were to be split 71.9% to Robert and 28.1% to Kinsey. We note that in the 2021 modification order, the family court based its ruling that Robert owed $1,014.30 in child support on an annual gross income of $77,003.29 for Robert (which has not been contested) and $35,000.00 for Kinsey, resulting in a 69%/31% split in the combined incomes. Robert's income has stayed essentially the same, while Kinsey's has increased.

In addition, during the modification proceedings, both parties had filed child support worksheets using the Craig Ross program, calculating the child support due with a shared custody formula that also included expense obligations and a credit for Robert's payment of the children's health insurance. In his worksheet filed in 2020 using financial records from both parties, Robert used gross annual incomes of $69,509.00 and $31,606.00 to calculate that he owed

Kinsey $339.00 in a shared custody arrangement (his presumed obligation was $1,392.00 and hers was $714.00). Kinsey's 2020 worksheet reflected gross annual incomes of $88,836.00 and $23,124.00 resulting in a calculation that Robert owed her $611.00 per month in a shared custody arrangement (the presumed obligations were $1,713.00 and $492.00). Robert's February 2021 worksheet used gross annual incomes of $73,541.00 and $34,992.00 to calculate that he owed $330.00 in monthly child support (his presumed obligation was $1,417.00 and hers was $758.00). Kinsey's February 2021 worksheet used gross annual incomes of $84,540.00 and $34,992.00 to calculate that Robert owed $419.00 per month in child support (his presumed obligation was $1,555.00 and hers was $717.00).

The family court, however, declined to deviate from the child support guidelines, citing its belief that Robert was seeking to limit his financial obligation to the children related to private school tuition and extracurricular activities and that he tried to present his income as less than it appeared to be while inflating Kinsey's income. Their shared, equal parenting time, the court concluded, was not sufficient to support a deviation from the guidelines. We agree with Robert that the considerations the court listed as the basis for its decision not to deviate from the guidelines constituted an abuse of discretion.

As to private school tuition, this Court held in *Ridgeway v. Warren*, 605 S.W.3d 567, 570 (Ky. App. 2020), that "in the absence of an agreement, a trial

court cannot order a parent to pay private school tuition without a showing that public schools are inadequate for a child's educational needs." We note that the parties' 2014 agreement only addressed the 2013/2014 school year and that they only agreed to renew their enrollment if they were financially able to do so. As to extracurricular activity fees, the parties had not addressed such fees in the 2014 agreement, and Kinsey had never moved the court to increase child support or to order Robert to pay a share of these fees. Finally, Robert had every right to examine Kinsey about her financial documents, including the deposit of unemployment benefits and payments from Etsy, and the court should not have penalized Robert for doing so.

Furthermore, as Robert pointed out in his brief, the General Assembly recently enacted a new section of KRS Chapter 403, KRS 403.2121, which mandates an adjustment of child support obligations based upon the amount of parenting time each parent has. This section, part of House Bill (HB) 404, was approved on March 19, 2021, and became effective on March 1, 2022. It provides, in relevant part:[4]

> (1) Except as provided in subsection (4) of this section or otherwise provided in this chapter, the child support obligation determined under KRS 403.212 shall be subject to further adjustment as follows:

---

[4] In HB 501, approved on April 8, 2022, the General Assembly repealed and reenacted KRS 403.2121. The new version of the statute has an effective date of March 31, 2023.

> (a) If the parents share equal parenting time, the child support obligation determined under KRS 403.212 shall be divided between the parents in proportion to their combined monthly adjusted parental gross income, and the parent with the greater proportional child support obligation shall pay the parent with the lesser proportional obligation the difference in the value of each parent's proportional obligation[.]

Based upon this legislative enactment, we agree with Robert that the General Assembly codified the practice of calculating child support by considering the number of nights each parent is exercising parenting time with the minor child or children. This represents Kentucky's public policy as to the calculation of child support.

As we stated in *Plattner*, "[w]ithin statutory parameters, the establishment, modification, and enforcement of child support obligations are left to the sound discretion of the trial court. However, this discretion is not unlimited. It must be fair, reasonable, and supported by sound legal principles." 228 S.W.3d at 579 (citations omitted). Our review establishes that the family court's modification of Robert's monthly child support obligation from $675.00 for three children to in excess of $1,000.00 for two children cannot be said to be fair, reasonable, or supported by sound legal principles. The parties had agreed to a support obligation that deviated from the child support guidelines and had submitted child support worksheets including calculations based upon shared

parenting, albeit using varying incomes. Robert's income had not increased from the time of the 2014 agreement while Kinsey's had. And the family court's reasons for not deviating from the guidelines were not legally proper under the circumstances of the case. We further note that the amount the family court set as Robert's obligation did not subtract his payment of the children's health insurance premiums, despite a statement in the order that this amount had been subtracted from it.

For these reasons, we hold that the family court abused its discretion in setting the modified amount of child support Robert owed to Kinsey. The family court should have calculated a modified amount considering their shared parenting arrangement. Therefore, we must vacate the March 4, 2021, order modifying child support and remand for a new calculation of Robert's obligation.

Robert's second appeal addresses the family court's order directing him to advance $5,000.00 in attorney fees for the appeal to Kinsey's counsel on her behalf. KRS 403.220 provides a court with the discretion to award costs and attorney fees in proceedings under KRS Chapter 403:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid

-26-

directly to the attorney, who may enforce the order in his name.

In *Rumpel v. Rumpel*, 438 S.W.3d 354, 363 (Ky. 2014), the Supreme Court of

Kentucky addressed this statute, observing:

> The purpose of the fee-shifting statute, we have noted, is simply to ensure the fairness of domestic relations proceedings:  "to prevent one party to a divorce action from controlling the outcome solely because he or she is in a position of financial superiority," *Neidlinger* [*v. Neidlinger*, 52 S.W.3d 513, 521 (Ky. 2001)], and "to equalize the status of the parties to a dissolution proceeding . . . in an effort to eliminate the inequities resulting from the termination of the relationship." *Sullivan* [*v. Levin*, 555 S.W.2d 261, 263 (Ky. 1977)].  To that end, if the parties' resources are disparate, the trial court enjoys a broad discretion under the statute to allocate costs and award fees, *Wilhoit v. Wilhoit*, 521 S.W.2d 512, 514 (Ky. 1975), including "wide latitude to sanction or discourage" "conduct and tactics which waste the court's and attorneys' time." *Gentry* [*v. Gentry*, 798 S.W.2d 928, 938 (Ky. 1990)].

A few years later, the Supreme Court clarified that a financial disparity does not

have to exist for a court to award fees; rather, it may be considered:

> [A]fter a trial court considers the parties' financial resources, it may order one party to pay a reasonable amount of the other party's attorney's fees.  The statute does not require that a financial disparity must exist in order for the trial court to do so; rather, that language is a creature of case law born out of this Court's decisions – and today, we slay this forty-year-old dragon hatched from precedent.
>
> While financial disparity is no longer a threshold requirement which must be met in order for a trial court

-27-

> to award attorney's fees, we note that the financial disparity is still a viable factor for trial courts to consider in following the statute and looking at the parties' total financial picture.

*Smith v. McGill*, 556 S.W.3d 552, 556 (Ky. 2018).

Kinsey based her motion for an advancement of attorney fees on the disparity in their income, with Robert earning 69% of their combined income, and her assertion that she would incur significant attorney fees to defend the appeal of the child support issue. Robert, in both his response to Kinsey's motion below and his appellate brief, pointed out that the family court had not held a hearing to consider their respective financial resources before awarding the fees and therefore did not have sufficient evidence to properly award fees. While Kinsey argues that the family court had recently held a hearing on child support modification that involved the parties' incomes and expenses, we agree with Robert that the family court did not specifically take any proof regarding the extent of their financial resources. And Robert again points to inconsistences in Kinsey's testimony as to the true amount of her income based upon the unemployment benefits deposited into her checking account and her Initial Me Pink page on Etsy. In addition, we note that the parties agreed to pay their own attorney fees in the 2014 agreement. The family court did not offer any reason for its award of fees, despite Robert's request in his motion to alter, amend, or vacate the fee award.

Because the family court did not hear any evidence as to the extent of the parties' financial resources, other than as to their respective income and some of the children's expenses, we hold that it was an abuse of discretion for the family court to award $5,000.00 in attorney fees on behalf of Kinsey to her counsel under these circumstances. Therefore, we must reverse the family court's April 23, 2021, order requiring Robert to pay $5,000.00 as an advancement of Kinsey's attorney fees for the appeal.

For the foregoing reasons, the order of the Jefferson Family Court modifying Robert's child support obligation is vacated, the order directing Robert to pay an advancement of Kinsey's attorney fees is reversed, and this matter is remanded for further proceedings in accordance with this Opinion.

THOMPSON, L., JUDGE, CONCURS.

MAZE, JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

M. Thomas Underwood
Louisville, Kentucky

BRIEF FOR APPELLEE:

Armand I. Judah
Louisville, Kentucky